**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CESAR LOPEZ, JANICE POTTER, BRYAN SMITH, KEVIN CURRY, DANIEL STONE, SABRINA DITMORE, AARON HANSON, BRANDY STEWART, and RENARDO RISPER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAKEFIELD & ASSOCIATES, LLC and REVCO SOLUTIONS, INC.,<br><br>Defendants. | Case No. 1:25-cv-02937-NYW-TPO |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1093161\329071640.v1

On March 13, 2026, Plaintiffs Cesar Lopez ("Lopez"), Janice Potter ("Potter"), Bryan Smith ("Smith"), Kevin Curry ("Curry"), Daniel Stone ("Stone"), Sabrina Ditmore ("Ditmore"), Aaron Hanson ("Hanson"), Brandy Stewart ("Stewart"), and Renardo Risper ("Risper") (collectively, "Plaintiffs") filed a Second Amended Consolidated Class Action Complaint (the "Complaint") asserting the following four claims against Defendants Wakefield & Associates LLC ("Wakefield") and RevCo Solutions, Inc. ("RevCo") (together, "Defendants"): (1) Negligence, (2) Negligence *Per Se*, (3) Breach of Third-Party Beneficiary Contract, and (4) Invasion of Privacy – Intrusion Upon Seclusion. *See generally* ECF No. 44. Defendants hereby move to dismiss the Complaint in its entirety for two independent reasons. First, the Court should dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) because each named Plaintiff independently and separately fails to meet the requirements of Article III standing. Second, the Court should dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) because Plaintiffs fail to plausibly allege a claim upon which relief can be granted.

## SUMMARY OF RELEVANT ALLEGATIONS

This action arises out of an alleged data breach of Wakefield's network in January 2025 (hereinafter, the "Data Breach"). ECF Nos. 29-2[1]; 44. Wakefield is a revenue cycle and collections consulting firm with clients that are medical providers. ECF No. 29-2. All

---

[1] Plaintiffs moved for leave to amend their complaint before filing the operative Complaint, but in filing the operative Complaint, failed to attach "Composite Exhibit A"—copies of breach notices sent to seven of the nine named Plaintiffs—which is referenced and relied upon by Plaintiffs, and was attached to the "proposed" version of the Complaint. ECF No. 29-2; ECF No. 44, ¶¶ 6, 29, 36-38, 66, 82, 97, 111, 126, 142, 159, 176, 193. The Court can consider Plaintiffs' breach notices when considering this Motion. *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); *Commonw. Prop. Advocs., LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

nine named Plaintiffs allege to be a current or former patient of unidentified client(s) of Wakefield. ECF No. 44, ¶¶ 65, 81, 96, 110, 125, 140, 157, 174, 191. Each Plaintiff alleges that they received a letter from Wakefield notifying them about the Data Breach. *Id.*, ¶¶ 66, 82, 97, 111, 126, 142, 159, 176, 193. Wakefield's letters separately informed each Plaintiff of the data involved in the Data Breach, and offered 12-month access to credit monitoring and identity theft protection services. ECF No. 29-2.

Plaintiffs allege that the prevalence of data breaches "has increased dramatically in recent years," with 353,027,892 victims of data breaches in the year 2023 alone, and over 276 million records compromised in just healthcare data breaches in 2024. ECF No. 44, ¶ 52. None of the Plaintiffs allege that any of their data involved in this Data Breach was not exposed in a different data breach. None of the Plaintiffs sufficiently alleged that the information that was involved in the Data Breach has been misused in the 14+ months since. Despite this, each Plaintiff claims that he or she faces different alleged injuries as a result of the Data Breach. *See* ECF No. 44, ¶¶ 65-207.

## **APPLICABLE LEGAL STANDARDS**

Pursuant to Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction based on lack of standing. FED. R. CIV. P. 12(b)(1); *Henderson v. Reventics, LLC*, No. 23-cv-00586-MEH, 2024 WL 5241386, at *1 (D. Colo. Sep. 30, 2024) (granting 12(b)(1) motion to dismiss data breach complaint for lack of standing). Plaintiffs must establish standing "at the time the action is brought" even if the complaint is later amended. *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013). A motion to dismiss under Rule 12(b)(1) admits all well-pleaded facts in the complaint; mere conclusory allegations do not suffice. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

To establish Article III standing, a plaintiff must allege: (1) an injury in fact; (2) that is fairly traceable to the defendant's actions; and (3) that is likely to be redressed by a favorable decision from the Court. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016); *Henderson*, 2024 WL 5241386, at *3. Plaintiffs have the burden of alleging facts demonstrating each of these three elements. *Spokeo, Inc.,* 578 U.S. at 338. To have an injury in fact, the plaintiff must have suffered an invasion of a legal interest that is concrete and particularized, actual and imminent, and not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1991); *Henderson*, 2024 WL 5241386, at *4; *TransUnion v. Ramirez,* 594 U.S. 413, 437 (2021) (a mere risk of future injury, without more, does not constitute an injury-in-fact sufficient to confer standing); *see also Petta v. Christie Bus. Holdings Co. P.C.,* 2025 IL 130337, ¶ 21 (Ill. 2025) (increased risk that private personal data was accessed does not confer standing). An injury in fact is "fairly traceable" when a plaintiff alleges "a substantial likelihood that the defendant's conduct caused [the injury]" and the injury was "not the result of the independent action of some third party not before the court." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, N.M.*, 993 F.3d 802, 814 (10th Cir. 2021) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)); *Henderson*, 2024 WL 5241386, at *4. A plaintiff must allege facts that, if true, show the defendant's conduct is a "but for" cause of the injury. *Santa Fe All. for Pub. Health & Safety*, 993 F.3d at 814.

Separately, a complaint may be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim for which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest*

*Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). For this analysis, the Court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest that the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Claims that simply provide "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement," will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## ARGUMENT

### I.    Plaintiffs Lack Standing to Sue.

Plaintiffs do not have Article III standing. They each separately and independently fail to allege an injury-in-fact. Regardless, even if any Plaintiff alleged an actual injury in fact (which Defendants deny), none of them allege any injury which is fairly traceable to the Data Breach. Each Plaintiff attempts to assert standing simply because he or she received a letter informing him or her of a data breach. This is not the law. *See, e.g., Henderson*, 2024 WL 5241386, at *5 ("[T]he mere fact that Plaintiffs' data was compromised in the breach does not confer them standing in this case.").

### A.    Plaintiff Aaron Hanson Does Not Have Standing.

#### 1.    Hanson has not alleged an injury in fact.

Hanson fails to allege any type of misuse involving any of his data, so his alleged risk of a future "fraud, misuse, and identity theft" fails to support a concrete injury-in-fact. ECF No. 44, ¶¶ 157-73; *Blood v. Labette Cnty. Med. Ctr.*, No. 5:22-cv-04036-HLT-KGG, 2022 WL 11745549, at *8 (D. Kan. Oct. 20, 2022) (plaintiffs lacked standing to sue for future harm when there were "no sufficient allegations of data misuse"); *Jenkins v. Associated Wholesale Grocers, Inc.,* No. 24-4039-DDC-GEB, 2025 WL 708574, at *10

4

(D. Kan. Mar. 5, 2025) (some form of actual misuse of impacted data is required to show an imminent risk of future harm in data privacy cases). It has now been 14 months since the Data Breach and Hanson still cannot allege any misuse of his data. ECF No. 29-2. This passage of time without any misuse confirms there is no imminent risk of future harm. *See, e.g., TransUnion,* 594 U.S. at 436-37 (passage of time will reveal whether the future risk of a speculative harm materializes into a concrete harm); *In re Zappos.com, Inc.,* 108 F. Supp. 3d 949, 958 (D. Nev. 2015) ("The more time that passes without the alleged future harm actually occurring undermines any argument that the threat of that harm is immediate, impending, or otherwise substantial.").

Hanson's time and "efforts" to mitigate the purported "effect" of the Data Breach cannot confer standing either. ECF No. 44, ¶¶ 164-65. Hanson claims that he spent time and effort "researching the Data Breach, monitoring his credit information, and changing passwords on his various accounts." *Id.,* ¶ 164. However, Hanson has not plausibly alleged a risk of future harm, so this was in response to a purely hypothetical threat, and thus, does not constitute an injury. *Henderson*, 2024 2024 WL 5241386, at *5 ("mitigation costs to proactively monitor their credit accounts is not an injury in fact that confers standing"); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 994 (W.D. Okla. 2021) (noting that taking steps to mitigate risks is "reasonable" but "those actions cannot create a concrete injury where there is no imminent threat of harm"); *Clapper v. Amnesty Int'l,* 568 U.S. 398, 416 (2013) ("If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear.").

Hanson's alleged emotional distress following the data breach similarly does not constitute an injury in fact. ECF No. 44, ¶ 169; *Masterson v. IMA Fin. Grp., Inc.*, No. 2:23-cv-02223-HLT-ADM, 2023 WL 8647157, at *7 (D. Kan. Dec. 14, 2023) (emotional distress based on hypothetical future harm did not confer standing).

Finally, Hanson's alleged decrease in value of his data is also not an injury in fact. ECF No. 44, ¶ 171. Courts routinely decline to find standing for this type of injury. *See, e.g., Henderson*, 2024 WL 5241386, at *6 (collecting cases).

### 2.      Hanson has not alleged a fairly traceable injury.

Regardless, Hanson does not have standing because he has not and cannot allege any alleged injury is fairly traceable to *this* Data Breach. Hanson acknowledges that the prevalence of data breaches "has increased dramatically in recent years," with over 350 million "victims" of data breaches in the year 2023 alone, and in 2024, over 276 million records compromised in just *healthcare* data breaches. ECF No. 44, ¶ 52. However, Hanson fails to allege *his* data was never compromised or exposed in any other data breach. *Id.*, ¶¶ 157-73. Consequently, Hanson cannot plausibly assert that his purported "injuries" are fairly traceable to *this* Data Breach. *Twombly*, 550 U.S. at 570 (holding when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). For example, Hanson argues that he suffered from diminution in the value of his data, but this conclusory claim of "injury" cannot be fairly traceable to this Data Breach if he was subject to a previous data breach. ECF No. 44, ¶ 171; *Suggs v. Lepe*, No. 23-cv-00820-CNS-NRN, 2024 WL 6817089, at *3 (D. Colo. Feb. 8, 2024) (conclusory allegations cannot support jurisdiction and need not be considered).

B.      **Plaintiffs Brandy Stewart and Renardo Risper Do Not Have Standing.**

1.      **Stewart and Risper do not allege an injury in fact.**

Stewart and Risper attempt to claim the same four "injuries" as Hanson—i.e., an increased risk of identity theft, misuse, or fraud, mitigation efforts, emotional distress, and diminution in value of their data—and like Hanson, neither alleges that any of their data was misused in the 14+ months since the Data Breach. ECF No. 44, ¶¶ 174-207. For the same reasons set forth with respect to Hanson, Stewart and Risper cannot substantiate an injury in fact. *See supra* Sec. I. A. 1.

2.      **Stewart and Risper have not alleged a fairly traceable injury.**

Even if Stewart or Risper plausibly alleged an injury in fact, Stewart and Risper each fail to allege they were not subject to any other data breach, so like Hanson, we cannot and must not presume that any of their alleged "injuries" are fairly traceable to *this* Data Breach. *See* ECF No. 44, ¶¶ 52; 174-207. *See supra* Sec. I. A. 2.

C.      **Plaintiff Bryan Smith[2] Does Not Have Standing.**

1.      **Smith has not alleged an injury in fact.**

Like Hanson, Smith attempts to claim an increased risk of identity theft, diminution in value of data, and mitigation efforts and emotional distress without facing an imminent and concrete risk of future harm. ECF No. 44, ¶¶ 103-04, 107-08. For the same reasons set forth regarding Hanson, these alleged "injuries" do not constitute an injury in fact for Smith. *See supra.* Sec. I. A. 1.

---

[2] Smith claims that he received a notice of the Data Breach from Wakefield and purportedly attached a "true and accurate cop[y]." ECF No. 44 ¶¶ 6, 97; ECF No. 29-2 (copy of "Composite Exhibit A" with breach notices). However, there is no notice to Smith attached. *See* ECF No. 29-2.

Unlike the other Plaintiffs, Smith alleges "on information and belief" that his (unidentified) data was "already posted for sale on the dark web." ECF No. 44, ¶ 100; *see also id.* at 1, introductory paragraph. Smith cannot manufacture standing based on "information and belief" allegations. *Allen, et al. v. SRP Fed. Credit Union,* No. 1:24-cv-07476-CMC, docket entry 51, at 13 (D.S.C. Oct. 9, 2025) (refusing to credit data breach plaintiff's allegation about dark web publication when it was made on information and belief)[3]; *see also Baker v. Tevault,* No. CV 20-01960-PHX-JAT (JZB), 2021 WL 1171492, at *8 (D. Ariz. Mar. 29, 2021) (dismissing claim alleged upon information and belief, noting post-*Twombly* pleading requires more). Moreover, Smith equivocates whether any of his data was actually published to the dark web; he alleges that "there is a strong probability" that the data "ha[s] been placed, *or will be placed*, on the dark web for sale." ECF No. 44, ¶ 255; *see also id.*, ¶ 252 (alleging an "unauthorized and likely release" of data onto the dark web). Accordingly, Smith's alleged risk of future harm is speculative and cannot substantiate standing. *See, e.g., Dougherty v. Bojangles' Rests., Inc.*, No. 3:25-CV-00065-KDB-DCK, 2025 WL 2810673, at *4 (W.D.N.C. Sep. 30, 2025) (plaintiffs who alleged publication *or* imminent publication of their data to the dark web lacked standing to sue, noting that the allegations "fall squarely in the 'might be a problem' rather than the 'already is a problem' category").

Smith's vague allegations of "publication" of data to the dark web do not constitute a separate concrete injury in fact, either. ECF No. 44, ¶ 100. Even setting aside the insufficiency of his allegations based on information and belief, and that Smith equivocates about whether any data was *actually* published, Smith does not allege any

---

[3] Per Civ. Prac. Stnd. 10(b)(3), a copy of the *Allen* opinion is attached at Ex. 1.

facts that *his* data at issue in the breach was on the dark web. *Id.*, ¶¶ 96-109, 252, 255; Ex. 1 *Allen,* No. 1:24-cv-07476-CMC, docket entry 51, at 13. Smith refers to two screenshots purportedly posted on the dark web by cybercriminals, neither of which suggests that *Smith's* information was published. ECF No. 44, ¶¶ 39-40, 100. Indeed, neither screenshot purports to confirm publication of any data from patients of Defendants' clients; one purports to claim that a cybercriminal is "ready to upload" "sensitive private *corporate* documents," and the other merely appears to have a link to "view" unspecified data from the "*Law Firm*" known as Wakefield & Associates. *Id.* (emphasis added). The screenshots suggest that any "Wakefield" data (i) was not ever published; (ii) did not belong to Smith (or any of the named Plaintiffs, for that matter); and/or (iii) does not relate to this Data Breach, but to a law firm that is not a party to this case. *Id.* Moreover, Smith alleges *other* data—not *his* "Personal Information"—was put on the dark web. *Id.*, ¶¶ 42, 352 (Wakefield employee credentials including email addresses and passwords alleged to be published to the dark web). Accordingly, Smith cannot plausibly allege *his* data was published to the dark web, and this "injury" cannot confer standing. *See Suggs*, 2024 WL 6817089, at *3.

Smith baldly claims a "violation of his right to privacy" but this does not qualify as an injury-in-fact. ECF No. 44, ¶ 102; *C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022) (plaintiff's loss of privacy "in and of itself, is not a concrete harm that can provide the basis for Article III standing"); *F.S. v. Captify Health, Inc.*, No. 23-1142-DDC-BGS, 2024 WL 1282437, at *4 (D. Kan. Mar. 26, 2024) ("Loss of privacy and confidentiality are present in every data breach case, and standing alone, they don't demonstrate a concrete injury."). Relatedly, Smith does not allege any

facts that support that his data was ever viewed or will imminently be viewed, so any alleged harm to his right to privacy is speculative. *Masterson*, 2023 WL 8647157, at *7.

Smith attempts to substantiate an injury in fact by claiming lost time related to his alleged receipt of an "influx" of "phishing emails." ECF No. 44, ¶ 105. This does not confer standing to sue, either. *See, e.g., Henderson*, 2024 WL 5241386, at *6 (collecting cases where increased spam communications after a data breach do not constitute an injury in fact); *Legg*, 574 F. Supp. 3d at 993 (noting that receipt of phishing emails did not "plausibly suggest" any actual misuse of data occurred).

Smith complains that he was "deprived…of the earliest ability to guard himself against the Data Breach's effects" yet he does not allege that he incurred any harm as a result of the alleged "delay" in notification—i.e., there was nothing that he could have "guard[ed] himself" from had he been notified any sooner. ECF No. 44, ¶ 101. This is not and cannot constitute a concrete injury in fact. *See, e.g., Masterson*, 2023 WL 8647157 at *6 (plaintiff lacked standing when he did not allege an injury from the defendant's delay in notifying him of the data breach); *F.S.*, 2024 WL 1282437, at *4 (same).

### 2.      Smith has not alleged a fairly traceable injury.

Similar to the other Plaintiffs, Smith fails to plausibly allege a fairly traceable injury to *this* Data Breach. ECF No. 44, ¶¶ 96-109; *see supra* Sec. I. A. 2. For example, Smith asserts on information and belief that his data "was already posted for sale on the dark web." ECF No. 44, ¶ 100. Smith does not identify what data. He does not allege when the data was published. He does not allege any data was not already published or affected in a different data breach. Smith offers no traceable link between to *this* Data Breach. *See, e.g.,* Ex. 1 *Allen,* No. 1:24-cv-07476-CMC, docket entry 51, at 19-20 (traceability requires the data misused to match the data exposed).

10

Smith's claim that he lost time sorting through "phishing emails" also does not plausibly allege traceability. Smith does not allege any facts that support that the phishing emails he received was due to *this* Data Breach, particularly when he acknowledges that data "like phone numbers, emails, addresses, etc." can be "found elsewhere on the internet." ECF No. 44, ¶ 220. Indeed, phishing communications, a type of "spam," are commonplace and a result of contact information being publicly available through a variety of avenues. *See McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) (noting "[s]pam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications."). Smith fails to allege that his email address was not available to the public. Additionally, there are no specific allegations regarding the timing of the phishing email from which the Court could infer a causal connection to the breach. ECF No. 44, ¶ 105; *Zerbe v. IMA Fin. Grp., Inc.*, No. 2:24-cv-02026-HLT-GEB, 2024 WL 3677395, at *6 (D. Kan. Aug. 6, 2024) (no traceability if the "only link" between the harm and the breach is that it "occurred after the data breach"); *Henderson*, 2024 WL 5241386, at *8 (activity that "occurred after the data breach" was not fairly traceable).

### D.    Plaintiff Daniel Stone Does Not Have Standing.

#### 1.    Stone has not alleged an injury in fact.

Like Hanson, Stone claims that he faces an increased risk of identity theft without any misuse of his data at issue, diminution in value of data, and mitigation efforts and emotional distress without an imminent and concrete risk of future harm. ECF No. 44, ¶ 132-38. For the same reasons set forth regarding Hanson, these alleged "injuries" do not constitute an injury in fact for Stone. *See supra* Sec. I. A. 1. Stone's alleged "violation" of

privacy and being deprived of the earliest chance to mitigate any effects of the Data Breach do not amount to an injury in fact, either, for the same reasons set forth regarding Smith. *See supra* Sec. I. C. 1.

Unlike the other Plaintiffs, Stone attempts to legitimize his claimed risk of future harm by alleging that he was "notified" that unspecified data was found on the dark web. ECF No. 44, ¶ 131. Not only are his allegations lacking (*e.g.,* he does not allege what data was involved, when the data was allegedly posted to the dark web, who notified him, how he was notified, etc.), but like Smith, Stone equivocates about whether any data was *actually* published or merely *will be* published to the dark web. *Id.*, ¶¶ 252, 255. Stone's alleged risk of future harm is speculative and conclusory and cannot substantiate standing. *See Suggs*, 2024 WL 6817089, at *3.

Similarly, Stone's conclusory claim that he lost time from an "influx" of "phishing communications" does not confer standing. ECF No. 44, ¶ 135. Neither phishing communications nor time spent dealing with them constitute an injury in fact. *Jenkins*, 2025 WL 708574, at *6. Regardless, Stone does not allege whether they were calls, emails, or texts, does not allege the content or frequency, and does not allege that he was not already receiving similar communications before the Data Breach. ECF No. 44, ¶ 135. These vague allegations cannot support a plausible concrete injury in fact. *See Dougherty*, 2025 WL 2810673, at *5.

### 2.    Stone has not alleged a fairly traceable injury.

Similar to the other Plaintiffs, Stone fails to plausibly allege a fairly traceable injury to *this* Data Breach. ECF No. 44, ¶¶ 129-39; *see supra* Sec. I. A. 2. For example, Stone asserts that he was notified that unspecified data "was found on the dark web." ECF No. 44, ¶ 131. However, this cannot be fairly traceable to this Data Breach when he has not

alleged what data was "found" (and whether it was even at issue in the Data Breach), when it was published, or whether it was previously exposed from a different data breach or otherwise publicly available. Stone alleges no traceable connection between the unknown data supposedly on the dark web to *this* Data Breach. *See* Ex. 1, *Allen,* No. 1:24-cv-07476-CMC docket entry 51, at 19-20.

Similarly, for the same reasons Smith did not allege traceability (*See supra* Sec. I. C. 2), Stone's claim that he lost time from "phishing communications" cannot be fairly traceable to this Data Breach. ECF No. 44, ¶¶ 135; 220.

### E.    Plaintiff Janice Potter Does Not Have Standing.

#### 1.    Potter has not alleged an injury in fact.

For the same reasons Hanson's alleged increased risk of identity theft without any misuse of the data at issue, diminution in value of data, and mitigation efforts and emotional distress without an imminent and concrete risk of future harm failed, they fail to substantiate an injury in fact for Potter. ECF No. 44, ¶¶ 86-95; *see supra* Sec. I. A. 1. Like Smith, Potter's alleged privacy violation and being deprived of the earliest chance to mitigate the breach do not amount to injuries in fact, either. *See supra* Sec. I. C. 1.

Like Stone, Potter's attempt to substantiate a risk of future harm by alleging that unspecified data was "found" on the dark web fails; she equivocates and offers no facts regarding this "finding." ECF No. 44, ¶¶ 86, 252, 255; *see supra* Sec. I. C. 2.

Potter also cannot manufacture standing based on a bare allegation that she lost time trying "to discern whether calls she receives are real or spam" and she received "phishing calls." ECF No. 44, ¶ 91; *Henderson*, 2024 WL 5241386, at *6 (allegations of unwanted communications "fail[ed] both the first and second elements of standing," noting "it is impossible to say that the breach played any role"). Moreover, there are no

13

allegations about timing of these calls, how often they occurred, how many were actually "phishing" or "spam" (or whether they were "real," and Potter simply needed "time to discern whether [they] were real"), or whether the phone number receiving the calls was at issue in the breach. ECF No. 44, ¶ 91. These speculative allegations do not substantiate an injury in fact. *See Jenkins*, 2025 WL 708574, at *6.

Unlike the other Plaintiffs, Potter alleges that she paid for credit monitoring (despite being offered free credit monitoring by Defendants). ECF No. 44, ¶ 86; ECF No. 29-2. However, this too is a response to her speculative fear of a hypothetical future harm and does not constitute a concrete injury. *See Legg*, 574 F. Supp. 3d at 994; *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (credit monitoring costs did not confer standing without an imminent risk of future harm, as the costs were "incurred to watch for a speculative chain of future events based on hypothetical future criminal acts").

### 2.     Potter has not alleged a fairly traceable injury.

For the reasons set forth regarding Hanson and Smith, Potter fails to plausibly allege a fairly traceable injury to *this* Data Breach. *See* ECF No. 44, ¶¶ 37, 52, 81-95, 220; *see supra* Secs. I. A. 2; I. C. 2.

### F.     Plaintiff Kevin Brian Curry Does Not Have Standing.

### 1.     Curry has not alleged an injury in fact.

For the reasons set forth concerning Hanson, Smith, and Stone, Curry's allegations of (i) a risk of future fraud, identity theft, and misuse, (ii) diminution in value of data, (iii) emotional distress, (iv) mitigation efforts, (v) violation of privacy, (vi) being deprived of the earliest chance to mitigate effects of the breach, (vii) phishing communications and any related lost time; and (viii) being notified about unspecified data being "found" on the dark web do not constitute a concrete injury. ECF No. 44, ¶¶ 114-

14

24; *see supra* Secs. I. A. 1; I. C. 1; 1. D. 1.

### 2.      Curry has not alleged a fairly traceable injury.

Similar to Hanson, Smith, and Stone, Curry cannot meet Article III's traceability requirement; he has not plausibly alleged any facts supporting a fairly traceable link between any allege harm to *this* Data Breach. ECF No. 44, ¶¶ 114-24; *see supra* Secs. I. A. 2; I. C. 2; I. D. 2.

### G.      Plaintiff Cesar Lopez Does Not Have Standing.

### 1.      Lopez has not alleged an injury in fact.

Like the other Plaintiffs, Lopez's allegations of (i) a risk of future fraud, identity theft, and misuse, (ii) diminution in value of data, (iii) emotional distress, (iv) mitigation efforts, (v) violation of privacy, (vi) being deprived of the earliest chance to mitigate effects of the breach, and (vii) phishing communications and any related lost time do not substantiate an injury in fact. ECF No. 44, ¶¶ 69-79; *see supra* Secs. I. A. 1; I. C. 1.

Unlike the other Plaintiffs, Lopez attempts to substantiate his claim for a concrete injury by baldly alleging he was contacted by his local Nissan dealer about "completing purchase [sic] of a vehicle, of which [he] had no prior knowledge." ECF No. 44, ¶ 71. Based on that single communication, Lopez claims that he "realized that someone had obtained his Social Security number and was committing identity theft to open a car loan in his name." *Id.* Lopez does not allege any facts to support this "realization" or that any fraud occurred. He does not allege anything to suggest that this "contact" from Nissan was anything more than a phishing attempt. For instance, he does not allege (i) that anyone actually applied for a car loan using his name; (ii) that the fraudster provided Lopez's SSN in an (unalleged) loan application; (iii) why the application did not result in a car purchase before he was contacted; (iv) how "Nissan" contacted him (phone, email,

15

etc.) and whether he verified the origin of the communication to be Nissan; (v) whether the dealer or Lopez took any steps to report the incident to law enforcement; or (vi) when and how the alleged fraudster communicated with Nissan. *Id*. In short, Lopez's allegations do not plausibly describe "identity theft" or any misuse at all. Thus, this alleged activity is not an injury-in-fact, nor does it support that Lopez faces an imminent risk of future harm. *See Suggs*, 2024 WL 6817089, at *3.

### 2.      Lopez has not alleged a fairly traceable injury.

Like the other Plaintiffs, Lopez fails to plausibly allege a fairly traceable injury to *this* Data Breach. ECF No. 44, ¶¶ 69-70; 72-79; *see supra* Secs. I. A. 2; I. C. 2.

Lopez's allegations regarding his local Nissan cannot support traceability, either. Lopez does not allege any facts matching any of the data at issue in this activity to the data at issue in the breach. Ex. 1 *Allen,* No. 1:24-cv-07476-CMC, docket entry 51, at 19-20.  He does not allege how being contacted by the dealer is related to *this* Data Breach*,* as he fails to allege whether his information at issue was the subject of any other data breach or otherwise available, etc. ECF No. 44, ¶ 71; *See Twombly*, 550 U.S. at 570. As explained above, Lopez also fails to plead any facts about the alleged communication from Nissan that support that it was, in fact, evidence of attempted identify theft, as opposed merely a phishing communication that could have resulted from his data "phone numbers, emails, addresses, etc." being "elsewhere on the internet." ECF No. 44, ¶¶ 75, 220. Thus, this alleged activity cannot be fairly traceable to *this* Data Breach.

### H.      Plaintiff Sabrina Ditmore Does Not Have Standing.

### 1.      Ditmore has not alleged an injury in fact.

16

Like the other Plaintiffs, Ditmore's[4] unsupported claims of (i) a risk of future fraud, identity theft, and misuse, (ii) diminution in value of data, (iii) emotional distress, (iv) mitigation efforts, (v) violation of privacy, (vi) being deprived of the earliest chance to mitigate effects of the breach, (vii) an increase in spam, and (viii) being notified about unspecified data being "found" on the dark web do not substantiate a concrete injury in fact. ECF No. 44, ¶¶ 147-55; *see supra* Secs. I. A. 1; I. C. 1; 1. D. 1.

Ditmore's allegations that she "experienced fraudulent activity involving her bank account, including unauthorized transactions" on an unidentified date after the breach also fail to meet Article III's injury requirement. ECF No. 44, ¶ 152. Ditmore does not allege what bank account, what the "fraudulent activity" entailed, why the transactions were "unauthorized," what "actual financial harm" she suffered, the result of her "corrective action", or any facts connecting the "activity" to the Data Breach. *Id.* These conclusory allegations cannot support Article III standing and need not be considered. *See Suggs*, 2024 WL 6817089, at *3.

### 2.     Ditmore has not alleged a fairly traceable injury.

For the reasons set forth herein regarding Hanson, Smith, and Stone, Ditmore has not alleged a fairly traceable injury to *this* Data Breach. ECF No. 44, ¶¶ 147-51, 153-55; *see supra* Secs. I. A. 2; I. C. 2; 1. D. 2.

Ditmore's bald assertion regarding fraudulent transactions on an unidentified bank account at an unalleged date do not meet the traceability requirement either. ECF No. 44, ¶ 152. This alleged activity cannot be fairly traceable to this Data Breach when Ditmore

---

[4] Like Smith, Ditmore claims that she received a notice of the Data Breach and attached a "true and accurate cop[y]" but there is no notice for Ditmore attached to the Complaint. ECF No. 44 ¶¶ 6, 142; ECF No. 29-2.

has not alleged that the bank information was at issue in *this* Data Breach, or that it was not otherwise exposed or acquired through another data breach. *Id.*; *see* Ex. 1 *Allen,* No. 1:24-cv-07476-CMC, docket entry 51, at 19-20. Ditmore does not allege any facts surrounding the purported fraudulent charges, and merely alleging activity "after" a data breach does not substantiate traceability. *See, e.g., Henderson*, 2024 WL 5241386, at *8.

## II.    Plaintiffs Failed to State a Claim.

### A.    Colorado State Law Applies to Plaintiffs' Common Law Claims

Courts apply the conflict-of-laws rules of the forum state in diversity actions. *Kipling v. State Farm Mut.*, 774 F.3d 1306, 1310 (10th Cir. 2014). In resolving choice of law issues, Colorado follows the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws (1971) for both contract and tort actions. *ITT Specialty Risk Servs. v. Avis Rent a Car Sys.*, 985 P.2d 43, 47 (Colo. App. 1998). Plaintiffs alleges that Wakefield's is a Colorado limited liability company with its principal place of business located in Colorado and that "a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in" Colorado. ECF No. 44, ¶¶ 24, 28. Because Colorado is the state with the most significant relationship, Colorado state law applies to Plaintiffs' common law claims.

### B.    Plaintiffs Failed to State a Claim Against Defendant RevCo.

In a single numbered paragraph and an unnumbered header that should be disregarded by the Court, Plaintiffs name five theories of liability that they assert make RevCo liable for the Data Breach: (i) direct conduct; (ii) agency; (iii) vicarious liability; (iv) successor liability; and (v) ratification. As described below, all five theories fail. *See also* ECF No. 36.

Plaintiffs make no allegations that RevCo engaged in any direct conduct that led to Plaintiffs' alleged harms. RevCo appears in only seven paragraphs out of the 361 in the Complaint, but Plaintiffs lump RevCo with Wakefield over 250 times by ambiguous and improper group pleading of "Defendants." *See* ECF No. 44, ¶¶ 25, 27, 59, 60, 62, 63, 64. Allegations "lumping Defendants together" are "insufficient to provide a basis for liability" and "insufficient to show centralized control" of one corporation by another. *Cochran v. Hewlett-Packard Co.*, No. 20-cv-01235-RM-MEH, 2024 WL 1156600, at *3-4 (D. Colo. Mar. 18, 2024). Similarly, Plaintiffs' RevCo allegations do not plausibly allege control sufficient to show an agency relationship or vicarious liability. ECF No. 44, ¶¶ 59-64; *see, e.g., Bancoklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1104 (10th Cir. 1999) (listing elements of agency); *Ochoa v. Vered*, 212 P.3d 963, 966 (Colo. App. 2009) ("Vicarious liability depends on the right to direct or control the actions of another.").

Plaintiffs' invocation of successor liability fails because the generic allegation about an announcement of a "strategic merger" between RevCo and Wakefield does not support any of the exceptions to the general rule that successor corporations do not become liable for the debts of another corporation. ECF No. 44, ¶¶ 59-64; *See Watson Family Trust v. Rockysoft Corp.*, No. 2017 CV 30462 (Colo. Dist. Ct. Larimer Cnty. Dec. 22, 2018).[5]

Plaintiffs' cursory reference to a ratification theory also fails. Plaintiffs do not plead RevCo's knowledge of the Data Breach or Wakefield's security practices, or that it accepted and approved a merger with full knowledge of those or other material facts. *See* ECF No. 44. "[R]atification can never exist unless it is clearly shown that the party charged

---

[5] Per Civ. Prac. Stnd. 10(b)(3), a copy of the *Rockysoft* opinion is attached at Ex. 2.

with ratification has full knowledge of all material facts, and thereafter knowingly accepts and approves." *Liberty Mortg. Corp. v. Fiscus,* 2016 CO 31, ¶ 23, 379 P.3d 278.

### C.    The Economic Loss Rule Bars Plaintiffs' Tort Claims.

An economic loss is defined "as damages other than physical harm to persons or property." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). A party that suffers only an economic loss from a breach of a contractual duty "may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* The economic loss rule applies even when parties do not directly contract with one another and the losses arise out of interrelated contracts. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). The "source of any duty regarding data security arises under" contract law. *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1084 (D. Colo. 2018). It is the contract that "govern[s] the data security standards and impose duties on the parties to protect data security in a specific way." *Id.* Plaintiffs' tort claims are barred by the economic loss rule because Plaintiffs' alleged injuries do not arise from physical harm to persons or property and Defendants owed no independent duty under Colorado tort law.

### 1.    Plaintiffs' Alleged Injuries Are Economic Losses.

Because Plaintiffs do not allege any physical damage to persons or property, Plaintiffs' alleged injuries are economic losses. *AZCO Constr., Inc.*, 10 P.3d at 1264. Each Plaintiff claims to suffer from feelings of anxiety, stress, fear, and frustration. *See e.g.*, ECF No. 44, ¶¶ 78, 93. Plaintiffs Hanson, Stewart, and Risper additionally allege to have suffered from sleep disruption. *Id.*, ¶¶ 169, 186, 203. However, these alleged injuries do not constitute "physical damage" to persons as they are merely generalized symptoms. The remaining alleged injuries, such as diminution in the value of their information, time

spent monitoring accounts, out-of-pocket costs for credit monitoring, and increased phishing and spam communications, do not constitute physical damage to property. Absent physical damage to persons or property, Plaintiffs' alleged injuries are purely economic. *AZCO Constr., Inc.*, 10 P.3d at 1264.

### 2. Defendants Did Not Owe An Independent Duty Under Tort Law.

Because (a) there is no special relationship between Defendants and Plaintiffs and (b) the sources Plaintiffs relies upon cannot serve as a basis for a tort claim, Plaintiffs fail to allege that Defendants owed an independent duty under tort law.

To begin, Colorado applies a different standard depending on whether the negligence claim is based on a defendant's active misconduct (misfeasance) or defendant's failure to act (nonfeasance). *Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002). The Complaint does not allege that the Defendants engaged in an affirmative act of misconduct; rather, the Complaint is replete with allegations of Defendants' failures to act. *See e.g.*, ECF No. 44, ¶¶ 8, 12. As a result, the analysis must proceed under the nonfeasance standard.

The existence of a duty in nonfeasance cases only exists in situations in which there is a special relationship between the parties. *N.M. v. Trujillo*, 2017 CO 79, ¶ 26, 397 P.3d 370. Colorado has recognized special relationships only in the following limited circumstances: "(1) common carrier/passenger, (2) innkeeper/guest, (3) possessor of land/invited entrant, (4) employer/employee, (5) parent/child, and (6) hospital/patient." *Id.* at ¶ 27. None of the six recognized categories of special relationships apply to this matter. Defendants are not common carriers, innkeepers, possessors of land hosting invited entrants, employers of Plaintiffs, parents of Plaintiffs, or hospitals treating Plaintiffs. Because the relationship between Defendants and Plaintiffs does not fall within any

recognized category of special relationship, Defendants do not owe an independent duty under Colorado tort law.

Plaintiffs may not pursue a tort claim based on the sources they cited in the Complaint. "Where a statute does not provide for a private cause of action, a plaintiff may not pursue a claim for relief based upon the statute." *Hurtado v. Brady*, 165 P.3d 871, 876 (Colo. App. 2007). Plaintiffs may not pursue a tort claim based on HIPAA or the FTCA because it is well settled there is no private right of action under those statutes. *See e.g.*, *American Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992) (finding no private right of act under the FTCA); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information."). With respect to the FTCA, "Congress empowered the Commission – and the Commission alone – to enforce the FTCA." *Alleruzzo v. SuperValu, Inc.*, 925 F.3d 955, 963-64 (8th Cir. 2019). Allowing the Plaintiffs to proceed with their tort claims based on the FTCA would be inconsistent with Congress's intent that the FTCA be enforced exclusively by the Commission and would contradict the FTCA's statutory scheme. *Id.* With respect to HIPAA, it was Congress's intent for HIPAA to be enforced by the Secretary of Health and Human Services, not private individuals. *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019). A "plaintiff's sole remedy for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office of Civil Rights, who has the discretion to investigate the complaint and impose sanctions, both civil and criminal." *Orr v. Carrington*, No. 3:18-cv-1986(MPS), 2019 WL 176958, at * 3 (D. Conn. Jan. 11, 2019) (citing 45 C.F.R. § 160.306). Allowing the Plaintiffs to proceed with their tort claims

based on HIPAA would be inconsistent with Congress's intent that HIPAA be enforced exclusively by the Secretary of Health and Human Services and would contradict HIPAA's statutory scheme and structure. *Id.*

Similarly, non-legislative sources, such as guidelines and publications, cannot serve as a basis for a tort claim. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 573 (Colo. 2008). Accordingly, the non-legislative sources referenced and relied upon in the Complaint cannot serve as a basis for Plaintiffs' tort claims. *See e.g.* ECF No. 44 at ¶¶ 266-268, 316. Because none of the sources Plaintiff relies upon can serve as the basis for Plaintiffs' tort claims, none of the sources create an independent duty on the Defendants under tort law.

### D. Plaintiffs' Negligence Claim Fails (Count I).

Even if this Court finds that the Economic Loss Rule does not bar Plaintiffs' tort claims, Plaintiffs negligence claim fails. To begin, "duty is the threshold element" and the other elements only arise if there is a legal duty. *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004). As set forth in Section II. C. 2., Defendants did not owe Plaintiffs a duty under Colorado common law. *See supra* Sec. II. C. 2.

Next, "[n]egligence is not actionable in Colorado unless it results in *physical damage* to persons or property." *Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.*, 959 F.2d 868, 871 (10th Cir. 1992) (emphasis in original). As discussed above, Plaintiffs do not allege any physical damage to persons or property. *See supra* Sec. II. C. 1. Absent physical damage to persons or property, Plaintiffs' alleged injuries are insufficient to sustain a negligence claim. *GAF Corp.*, 959 F.2d at 871.

Moreover, Plaintiffs also failed to adequately plead causation. "To succeed on a negligence claim, a plaintiff must prove that the defendant's breach of its duty of care

23

caused the claimed injury." *Garcia v. Colo. Cab Co., LLC*, 2023 CO 56, ¶ 20, 538 P.3d 328. Causation requires the plaintiff to show both "cause in fact" and "proximate cause." *Id.* The test for "cause in fact" is "whether but for the alleged negligence, the harm would not have occurred." *Id.* (quoting *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 28, 467 P.3d 287). To show proximate cause, a plaintiff must show "that it was foreseeable that the defendant's negligence would result in injuries to others and that this negligence was a substantial factor in causing the plaintiff's injuries." *Garcia*, 2023 CO 56, ¶ 21. Notably, however, an intervening cause may break the chain of causation from the original negligent act and become the proximate cause of the plaintiff's injury, thus relieving the defendant of liability. *Deines v. Atlas Energy Servs., LLC*, 2021 COA 24, ¶ 14, 484 P.3d 798. "To absolve the defendant of responsibility, the intervening cause must be fully independent of, and not have been set in motion by, the original negligence." *Id.*

The Complaint does not set forth any factual allegation establishing that "but for" Defendants' alleged inadequate cybersecurity measures, their injuries would not have occurred. The Complaint relies only on conclusory allegations that Defendants failed to implement reasonable cybersecurity safeguards and speculates that measures such as encryption, multi-factor authentication, and employee training would have prevented the Data Breach. ECF No. 44, ¶¶ 33, 42, 44. But the Complaint is devoid of any particularized connection between Defendants' lack of a specific cybersecurity safeguard and Plaintiffs' alleged injuries. The Complaint itself acknowledges that the Data Breach was perpetrated by sophisticated third-party criminal actors who independently targeted Defendants' systems. ECF No. 44, ¶¶ 39-40. Thus, the cause-in-fact of Plaintiffs' alleged injuries was

the deliberate criminal conduct of the third-party hackers, not any act or omission by Defendants.

The hackers' criminal actions also constitute an independent, superseding intervening cause that severs any alleged causal chain between Defendants' conduct and Plaintiffs' claimed injuries. As mentioned above, the Complaint itself makes clear that it was these criminal actors who gained unauthorized access to Defendants' systems. ECF No. 44, ¶¶ 39-40. Plaintiffs' alleged injuries flow directly from the hackers' criminal actions, not from any act or omission by Defendants. Indeed, Plaintiffs have not, and cannot, plead that Defendants' alleged conduct set in motion the hackers' criminal acts. Instead, the hackers' criminal actions were "fully independent of, and not set in motion by," any of Defendants' alleged acts or omissions. *Deines*, 2021 COA 24, ¶ 14.

Plaintiffs also fail to show that it was foreseeable that Defendants' alleged negligence would result in injuries to others, or that Defendants' conduct was a substantial factor in causing Plaintiffs' injuries. As to foreseeability, the Complaint does not set forth any factual allegations establishing that the specific harms Plaintiffs claim to have suffered were a foreseeable consequences of Defendants' alleged actions or inactions. As to the substantial-factor requirement, the Complaint likewise falls short. For example, Plaintiff Lopez alleges that someone attempted to open a car loan in his name, yet the Complaint does not allege facts showing that this incident resulted from the Data Breach rather than from some other source of compromise, nor that Defendants' conduct was a substantial factor in bringing about that specific harm. ECF No. 44, ¶¶ 65-80. Similarly, several Plaintiffs allege only a speculative "belief" that their information appeared on the dark web because of the Data Breach, without excluding other possible sources of

25

exposure, which is insufficient to demonstrate that Defendants' negligence was a substantial factor in any resulting injury. *See supra* Sec. I. C. 1. Because the Complaint fails to plausibly allege both that Plaintiffs' injuries were a foreseeable consequences of Defendants' conduct and that Defendants' conduct was a substantial factor in producing those injuries, it does not adequately plead proximate cause.

### E.    Plaintiffs' Negligence *Per Se* Claim Fails (Count II).

To state a claim of negligence *per se* a plaintiff must establish that the statute allegedly violated allows a private right of action. *Hurtado*, 165 P.3d at 876. As set forth above, it is well established that there is no private right of action under the FTCA or HIPAA. *See supra* Sec. II. C. 2. For this reason alone, Plaintiffs negligence *per se* claim fails.

Moreover, not only is enforcement of Section 5 of the FTCA exclusive to the FTC, violations of Section 5 must be brought before an Administrative Law Judge ("ALJ"). "If the Commission has 'reason to believe' that a party 'has been or is using any unfair method of competition or unfair or deceptive act or practice,' it can file a complaint against the claimed violator and adjudicate its claim before an [ALJ]." *AMG Capital Mgmt., LLC v. FTC*, 593 U.S. 67, 72 (*quoting* 15 U.S.C. § 45(b)). Indeed, if the FTC wants to obtain restitution for consumers it must go through the administrative process – it cannot file suit in court, a process authorized by Section 13 of the FTCA. *AMG Capital Mgmt., LLC*, 593 U.S. at 72. But as the U.S. Supreme Court noted "§13(b) as currently written does not grant the Commission authority to obtain equitable monetary relief." *Id.* at 82. Thus, if Plaintiffs were allowed to proceed using the FTCA as the basis for their negligence *per se* claim, not only would the Court be reading in a private right of action not created by Congress, it would be creating jurisdiction for state and federal courts that the U.S.

Supreme Court has expressly rejected. And even if Plaintiffs had pled a claim under Section 13 of the FTCA, which they have not, they would not be able to obtain damages. *See id.* As such, the U.S. Supreme Court's decision in *AMG Capital Mgmt.* requires that the Plaintiffs' negligence *per se* claim be dismissed.

Even without these impediments, Plaintiffs have failed to allege facts necessary to state an FTCA claim. "To establish a deception claim under Section 5 of the FTCA, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). Additionally, for a practice to be unfair, it must be one that "(1) causes or is likely to cause substantial injury to consumers (2) which is not reasonably avoidable by consumers themselves and (3) not outweighed by countervailing benefits to consumers or to competition." *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1193 (10th Cir. 2009) (citing 15 U.S.C. § 45(n)). Plaintiffs use the terms "unfair" and "deceptive" in only four paragraphs, and they do not plead particular facts to support any elements of the aforementioned standards. ECF No. 44, ¶¶ 270, 271, 325, 331. Instead, Plaintiffs simply conclude that the data breach "constitutes an unfair act or practice prohibited by Section 5 of the FTCA." *Id.*, ¶ 271. This is not enough to state a claim for relief.

F.      **Plaintiffs' Breach of Third-Party Beneficiary Contract Claim Fails (Count III).**

A third-party beneficiary is an individual not a party to a contract who may nevertheless enforce a contract. *S K Peightal Engineers, LTD v. Mid Valley Real Est. Sols. V, LLC*, 2015 CO 7, ¶ 7, 342 P.3d 868. A third-party beneficiary may only enforce a contract that the contracting parties "intended to confer a benefit on the third party when

27

contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996). As an initial matter, the Complaint is devoid of any factual allegation that Defendants and their clients specifically intended to confer a direct benefit on Plaintiffs. Instead, Plaintiffs simply assert that they received a benefit from the contracts entered into between Defendants and their clients and, therefore, Plaintiffs must have been intended beneficiaries. ECF No. 44, ¶ 342. But this reasoning conflates incidental benefit with express intent. Any contract between a service provider and a business may benefit the business's customers, but that does not automatically make the customers a third-party beneficiary to the agreement. Again, the contracting parties must have "intended to confer a benefit on the third party when contracting." *Everett*, 929 P.2d at 12*.* Here, the Complaint is devoid of any such factual allegations.

Even if Plaintiffs could establish that Defendants and their clients intended to confer a direct benefit on Plaintiffs, their claim still fails because they do not adequately allege a breach of contract claim. In Colorado, to establish a prima facie breach of contract claim, one must show "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Plaintiffs allege that "Defendants breached their contracts with their clients by failing to protect the Private Information it obtained pursuant to these contracts," ECF 44, ¶ 344; yet, this allegation is entirely conclusory. Most notably, Plaintiffs identify no specific contractual provision, standard of care, or obligation Defendants failed to perform. *See Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA 148, ¶ 55, 527 P.3d 440. Plaintiffs

28

further failed to allege that they performed their duties under the contract or provide any justification for nonperformance. Moreover, as discussed throughout herein, *e.g., see supra* Sec. 1, Plaintiffs failed to establish that their damages are traceable to and a direct result of Defendants' alleged breach. *Runiks v. Peterson*, 155 Colo. 44, 45, 392 P.2d 590 (Colo. 1964) ("[B]efore damages can be awarded to a claimant he must establish that the damages he seeks are traceable to and are the direct result of the wrong sought to be redressed."). Accordingly, not only have Plaintiffs failed to establish they were intended beneficiaries, but they have failed to sufficiently allege a breach of contract claim.

### G. Plaintiffs' Invasion of Privacy – Intrusion Upon Seclusion Claim Fails (Count IV).

To establish a claim for intrusion upon seclusion, one must show (1) the defendant intentionally intruded upon the plaintiffs seclusion or solitude, (2) the defendant's intrusion would be very offensive to a reasonable person, (3) damages, and (4) the defendant's intrusion caused the damages. *Doe v. High-Tech Institute, Inc.*, 972 P.2d 1060, 1067 (Colo. App. 1998); Colo. Pattern Civ. Jury Instructions, 28.1. First, Plaintiffs have not, and cannot, establish it was Defendants who intruded upon their seclusion or solitude. The Complaint makes it clear that Defendants did not intrude upon Plaintiffs' seclusion or solitude. ECF No. 44, ¶¶ 39-40. Plaintiffs allege that unauthorized third-party cybercriminals breached Defendants' systems and took the Plaintiffs' information *Id*. Defendants are alleged to have been the victims of a criminal cyberattack, not the perpetrators. *Id.* Second, Plaintiffs cannot establish Defendants acted intentionally. Plaintiffs contend that because (a) data breaches are frequent and (b) Defendants' security practices were allegedly inadequate, Defendants acted intentionally because Defendants were "substantially certain" that a breach would occur. ECF No. 44, ¶ 359.

This conclusory allegation stretches the definition of intent under the Restatement (Second) of Torts well beyond its recognized boundaries. Restatement (Second) of Torts § 8A (Am. Law Inst. 1975). Knowledge that a risk exists, does not equate to substantial certainty that the harm will occur. *See id.* Lastly, as explained in Section II. D. herein, Plaintiffs failed to sufficiently establish that Defendants actions or omissions caused Plaintiffs' alleged injuries. *See supra* Sec. II. D. Accordingly, for the reasons set forth herein, Plaintiffs have not, and cannot, establish a claim for intrusion upon seclusion.

## CONCLUSION

As set forth in the foregoing Motion and Memorandum in Support of its Motion to Dismiss, Defendants Wakefield & Associates LLC and RevCo Solutions, Inc. respectfully request that this Court grant its Motion and dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint in its entirety.

Dated: April 13, 2026                                Respectfully submitted,

WAKEFIELD & ASSOCIATES, LLC and
REVCO SOLUTIONS, INC, Defendants

*/s/ Joseph M. Sanders*
Joseph M. Sanders
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel: 312-704-3345
Email: jmsanders@hinshawlaw.com

*/s/ Peyton K. Phillips*
Peyton K. Phillips
**HINSHAW & CULBERTSON LLP**
790 N Water Street, Suite 1950
Milwaukee, Wisconsin 53202
Tel: 414-225-4830
Email: pphillips@hinshawlaw.com

**<u>Certification Re: Use of Generative Artificial Intelligence ("AI") for Drafting</u>**

The undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

Dated: April 13, 2026

   _/s/ Joseph Sanders_
Joseph Sanders

   _/s/ Peyton Phillips_
Peyton Phillips

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

I hereby certify that counsel for all parties have conferred in good faith regarding the

issues addressed in this motion and have been unable to resolve or narrow them.

Dated: April 13, 2026                    */s/ Joseph Sanders*