# Exhibit 2

 Cited
As of: April 13, 2026 4:50 PM Z

# *Watson Family Trust v. Rockysoft Corp.*

District Court of Colorado, Larimer County

December 22, 2018, Filed

Case No.: 2017 CV 30462

## Reporter

2018 Colo. Dist. LEXIS 3695 *

WATSON FAMILY TRUST, Plaintiff, v. ROCKYSOFT CORPORATION, et al, Defendants.

## Core Terms

promissory note, undisputed, subsidiary, transfer of assets, summary judgment, fiduciary duty, piercing, successor liability, summary judgment motion, perpetuate, insolvent, alleges, asserts, argues, fraudulent transfer, undisputed evidence, voluntary surrender, material fact, deposition, fraudulent, terminated, alter-ego, loans, ego, officers and directors, plaintiff's claim, legal entity, continuation, membership, entity

**Judges:** [*1] Stephen J. Jouard, District Judge.

**Opinion by:** Stephen J. Jouard

## Opinion

**ORDER REGARDING DEFENDANTS' ROCKYSOFT CORPORATION, TCFKAPE, LLC, PLANNING EDGE CORPORATION, DURY L VINTON TRUST, DRURY L. VINTON PAUL D. READER and MARK KENT MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the court on the motion for summary judgment filed on behalf of Defendants Rocky Soft Corporation ("RSC"), TCFKAPE, LLC f/k/a PlanningEdge LLC f/k/a RockySoft LLC, Planning Edge Corporation f/k/a PE Acquisition Corporation, Drury L. Vinton Trust, Drury L. Vinton, Paul D. Reader, and Mark R. Kent pursuant to *Rule 56 of the Colorado Rules of Civil Procedure.* Defendants Bradley J. Florin and Fort Equity RS, LLC have joined in the motion for summary judgment adopting the arguments of the other Defendants. Plaintiff Watson Family Trust ("WFT") opposes the motion for summary judgment. The court has reviewed Defendants' motion, Plaintiff's response and the reply filed on behalf of Defendants as well as the accompanying supporting evidence. Being fully informed in the premises the court grants Defendants' motion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a revocable inter vivos trust created for the benefit of Lawrence B. Watson and Mary Catherine Watson, who also serve as co-trustees. [*2] Plaintiff asserts multiple claims against Defendants including claims under various provisions of the Colorado Uniform Fraudulent Transfers Act ("CUFTA"), for successor liability, civil conspiracy, and breach of fiduciary duty relating to a collection action under a promissory note executed by RSC in favor of WFT. Plaintiff alleges, *inter alia*, that RS, LLC as the wholly owned subsidiary of RSC is an "alter ego" and Plaintiff seeks to reverse pierce the corporate veil asserting that the subsidiary, RS, LLC and subsequent transferees are liable to Plaintiff on the

promissory note.

Defendants generally deny WFT's claims and assert that plaintiff's claims under the promissory note executed by RSC in favor of WFT cannot be enforced against RS, LLC or the other Defendants. Further, Defendants argue that the material undisputed facts support their motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

The Colorado Rules of Civil Procedure allow a court to enter summary judgment before trial when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *City of Longmont v. Colorado Oil and Gas Ass'n, 369 P.3d 573, 577-78, 2016 CO 29 (Colo. 2016)*; *C.R.C.P. 56(c)*. In determining whether summary judgment is proper, the court must **[*3]** grant the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party. *Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 83 (Colo. 1999)*. In responding to a properly supported summary judgment motion the nonmoving party may not rest on its mere allegations or denials of the opposing party's pleadings but must provide specific facts demonstrating a genuine issue for trial. *C.R.C.P. 56(e)*.

Because summary judgment is a "drastic remedy," the absence of a dispute as to all issues of material fact must be clearly shown and all doubts as to the presence of disputed facts must be resolved against the moving party. *KN Energy v. Great W. Sugar Co., 698 P.2d 769, 776 (Colo. 1985)*. The party opposing summary judgment is entitled to all favorable inferences that may reasonably be drawn from the facts contained in the record. *Clementi v. Nationwide Mut. Fire Ins. Co., 16 P.3d 223, 225-26 (Colo. 2001)*. Summary judgment is only appropriate where the admitted facts demonstrate that the party cannot prevail and is only appropriate in the clearest of cases where no doubt exists concerning the facts. *Roderick v. City of Colorado Springs, 193 Colo. 104, 563 P.2d 3, 5 (Colo. 1977)*. The absence of a genuine issue of material fact must be apparent and there must be a complete absence of any genuine issue of fact. *Abrahamsen v. Mountain States Tel & Tel Co., 177 Colo. 422, 494 P.2d 1287, 1288-89 (Colo. 1972)*.

### B. Statement of Material Undisputed Facts

Based upon the briefing of the parties, it **[*4]** appears to the court that the following material facts are undisputed:

1. In 1998, Lawrence B. Watson ("Watson") founded RockySoft Corporation ("RSC"), a Colorado corporation, with John Heinrich. Watson created the inventory management software for the corporation which became the core product of RSC.

2. In 2013, RSC engaged Brad Florin and Mark Kent, and their company Fort Equity RS, LLC, to provide business consulting services to RSC.

3. On December 17, 2013, the Board of Directors of RSC enacted a plan to create RockySoft, LLC, for tax purposes, and to convey all of RSC's assets and business operations to RockySoft, LLC ("RS, LLC") in exchange for a membership in the LLC.

4. RSC's board and stockholders, including Watson, who was on the Board of Directors for RSC and owned 20% of RSC's stock at the time, voted in favor of the transfer of assets from RSC to RS LLC. (Watson Tr. 67:15-

67:21).

5. Watson agreed and understood that all of RSC's assets would be transferred to RS, LLC. He also testified in his deposition that the transfer was made to provide tax advantages.

6. Watson further testified in his deposition that he understood that as a result of the transfer of assets, RSC and RS, **[*5]** LLC were two distinct legal entities and would have to file separate tax returns. Watson further testified that RS, LLC was operated as a separate legal entity. (Watson Tr. 194:1-9).

7. On January 1, 2014, articles of Organization for RS, LLC, were filed with the Colorado Secretary State.

8. In June of 2014, Watson's employment as chief scientist with RSC was terminated. According to Watson he was terminated for allegedly not supporting management direction.

9. At the time that Watson's employment was terminated, he was aware that RS, LLC was facing significant financial challenges and that it was not profitable. (Watson Tr. 121:4-9).

10. Watson retained counsel and contested his termination by letter dated November 4, 2014. (Watson Tr. 109:11-110:5, Dep. Ex. 4).

11. In January of 2015, Watson and RSC both represented by counsel, entered into a settlement in which the parties agreed to mutually release each other with regard to asserted claims. Watson agreed to terminate his 20% ownership interest in RSC and release claims related to his termination. In exchange, RSC agreed to pay Watson $10,000, and to execute a $1 million promissory note payable to the WFT. (Watson Tr. Dep. Ex. 6, Confidential **[*6]** Settlement, Release and Termination Agreement).

12. Pursuant to the parties' settlement agreement, a promissory note was issued to WFT on January 12, 2015, by RSC in the amount of $1,000,000 payable over the term of 10 years.

13. The promissory note payable to WFT was unsecured.

14. Watson testified in his deposition that during negotiations he requested security for the promissory note as well as a guarantor on the note, but ultimately agreed to accept the note knowing that it was unsecured and there would be no guarantor. Watson testified that he agreed to an unsecured promissory note so that the LLC would still be able to acquire any necessary lines of credit to finance its operations (Watson Tr. 10:8-11:24).

15. At the time that the promissory note was executed, RSC's sole asset was its membership interest in the LLC.

16. Watson was aware at the time that he accepted the unsecured promissory note that RSC had no assets other than its membership interest in RS, LLC. (Watson Tr. 118:13-17).

17. On January 12, 2015, when the promissory note was executed, RSC had a $200,000 term loan and $250,000 revolving line of credit with Guaranty Bank. These loans were secured by a lien on all of RSC's **[*7]** assets and were personally guaranteed by the company's CEO, Jeffrey Porter, as well as RS, LLC. (Ex. B. to Kent Aff)

18. On March 31, 2015, RSC made the first and only $25,000 installment payment to Plaintiff under the promissory note. The payment appears to have been made on the account of RS, LLC at Guaranty Bank, Acct No. 4000497836.

19. On or about May 11, 2015, Paul Reader and Drury Vinton who were early investors and shareholders in RSC paid off the Guaranty Bank loans and extended loans directly to RS,

2018 Colo. Dist. LEXIS 3695, *7

LLC. The Reader and Vinton loans were secured by a lien on RS, LLC's assets. (Watson Tr., Ex. 16)(Kent Aff. ¶ 17-18)

20. In June of 2015, RS, LLC changed its name to PlanningEdge, LLC.

21. On August 31, 2015, Reader and Vinton raised their revolving line of credit to PlanningEdge, LLC to $500,000. (Kent, Aff. ¶20).

22. RSC failed to make required payments to WFT under the promissory note on June 30, 2015, September 30, 2015, and December 31, 2015. According to Defendant Kent, payment on the promissory note could not be made because RSC had no funds to pay the note and there were no profit distributions from Planning Edge, LLC because it was not profitable and was incurring significant **[*8]** losses. Id.

23. On March 7, 2016, WFT filed suit against RSC in Larimer County District Court Case No. 2016 CV 30225 alleging WFT made a loan to RSC which was outstanding in the principal amount of $1,000,000 plus accrued interest, and that the loan was in default for non-payment.

24. On April 27, 2016, RSC filed a Motion to Dismiss in 2016 CV 30225.

25. On May 23, 2016, the Larimer County District Court denied RSC's motion to dismiss.

26. On May 24, 2016, Reader and Vinton notified PlanningEdge, LLC that it had defaulted on its loans to Reader and Vinton. The notice of default is evidenced by a letter from counsel for Reader and Vinton. The letter identifies three events of default including the PlanningEdge, LLC's failure to make payment required under the loan and security agreement, the fact that the borrower's parent company, RSC was in default under the note payable to WFT and, finally, the borrower RS,

LLC's insolvency. (Watson Tr., Ex. 20).

27. On May 27, 2016, the Board of Directors of RSC agree to the voluntary surrender of the assets of PlanningEdge, LLC to secured creditors Reader and Vinton. (Watson Tr. Ex. 21).

28. There are disputed issues of material fact as to the value **[*9]** of the assets voluntarily surrendered by PlanningEdge, LLC to Reader and Vinton on May 27, 2016. Defendants contend that the equity value of PlanningEdge, LLC was $240,000 on the date of foreclosure/voluntary surrender. Plaintiff asserts a business valuation on the date of the voluntary surrender of $2,700,000.

28. On June 1, 2016, PE Acquisition Corporation is incorporated by Defendant Florin.

29. On June 16, 2016, Reader and Vinton agree to sell the assets surrendered by PlanningEdge, LLC to PE Acquisition Corporation in exchange for stock.

30. On June 16, 2016 PE Acquisition Corporation was operating and serving the same customers that PlanningEdge, LLC had been serving. (Kent Tr. 29:23-30:3)

30. On June 20, 2016, PE Acquisition Corporation changed its name to PlanningEdge Corporation. On the same date, PlanningEdge, LLC, changed its name to TCFKAPE, LLC.

31. On July 5, 2016, a fully executed Stipulated Motion for Entry of Judgment was filed in 2016CV30225. On July 8, 2016, judgment was entered in favor of WFT against RSC in the amount of $1,036,379.18.

32. On August 1, 2016, TCFKAPE, LLC dissolved.

33. On August 26, 2016, RSC Board of

Directors agreed to dissolve RSC.

## III. ANALYSIS

### A. Plaintiff's [*10]  Reverse-Piercing Claims

Colorado law permits outside "reverse piercing" when justice requires that the corporate identity be disregarded *In. re Phillips, 139 P.3d 639 (Colo. 2006)*. Reverse piercing occurs when a claimant seeks to disregard the separate existence of a corporation and obtain the assets of the entity due to the actions of a dominant shareholder or other corporate insider. *Zahra Spiritual Trust v. United States, 910 F.2d 240, 244 (5th Cir. 1990)*. Defendant argues that based upon the material undisputed facts, Plaintiff WFT's claims for "reverse piercing" must be denied. To support a claim for reverse piercing WFT must establish three elements:

> (1) That RSC and PlanningEdge LLC are alter egos of each other;
>
> (2) that justice requires recognizing the substance of the relationship over the form because the corporate fiction is utilized to perpetuate a fraud or defeat a rightful claim; and
>
> (3) an equitable result is achieved by piercing,

### 1. Alter-ego

An alter-ego relationship exists when the corporation is a mere instrumentality for the transaction of the shareholder [here the sole member's] affairs and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist. *Krystkowiak v. W.O. Brisben Cos., 90 P.3d 859 (Colo. 2004)*. In *In re Griffith v. SSC Pueblo Belmont Operation Co. LLC,*

*381 P.3d 308, 2016 CO 60M (Colo.2016)*, the Colorado Supreme Court identified eleven factors that [*11] should be considered in determining whether an entity is a mere instrumentality for purposes of piercing the corporate veil. Those factors include:

> (1) The parent owns all the stock;
>
> (2) Both entities have common directors and officers,
>
> (3) the parent finances the subsidiary;
>
> (4) the parent causes the subsidiary's incorporation;
>
> (5) the subsidiary has grossly inadequate capital;
>
> (6) the parent pays salaries or expenses of the subsidiary;
>
> (7) the subsidiary has no business except with its parent or subsidiary corporation or no assets except those transferred by its parent or subsidiary;
>
> (8) directors and officers do not act independently in the interests of the subsidiary;
>
> (9) formal legal requirements of the subsidiary such as keeping corporate minutes are not observed;
>
> (10) distinctions between the parent and subsidiary are disregarded or confused;
>
> (11) subsidiaries do not have full board[s] of directors.

In support of its argument that PlanningEdge, LLC was the alter-ego of RSC, Plaintiff asserts numerous facts set forth in Exhibit B to its response to the motion for summary judgment. It is undisputed that RSC was the sole member of Planning Edge, LLC. It is further undisputed that RSC financed [*12]

PlanningEdge, LLC with the transfer of all of the assets of RSC. It is undisputed that RSC caused the formation of RS, LLC subsequently re-named PlanningEdge, LLC. With regard to a number of other factors to be considered, the undisputed evidence supports that both RSC and RS, LLC were thinly capitalized. After the transfer of assets from RSC to RS, LLC the parent, RSC had no assets and the subsidiary was thinly capitalized and according to Plaintiff's expert, Mr. Harris, likely insolvent. [Pl. Ex. L pp. 60:16-65:22]. The parent RSC had no business other than its membership interest in the RS, LLC. Plaintiff alleges in response to the motion that RS, LLC made distributions in May and June 2016 to pay RSC's legal fees. Plaintiff further alleges that the corporate forms were disregarded and/or confused with funds payable to RSC deposited into the RS, LLC accounts and that loan proceeds from Guaranty Bank to RSC were drawn into and used by RS, LLC.[1] Plaintiff further alleges that RS, LLC did not have a separate board or directors, which would favor a finding of alter ego. Here, RSC was the sole member of RS, LLC.

In response to Plaintiff's alter ego claims, Defendants note that the mere **[\*13]** fact that parent owns 100% of the stock in the subsidiary in not sufficient, in and of itself to justify piercing the corporate veil. *Yoder v. Honeywell, Inc. 104 F.3d 1215 (10th Cir. 1995).*[2] Defendants assert that it is undisputed that PlanningEdge, LLC observed all corporate formalities, kept a separate tax ID number,

maintained separate books and paid its own employees. Defendants' further assert that Watson specifically agreed and approved formation of RS, LLC, the transfer of assets to RS, LLC and acknowledged in his deposition that RS, LLC was a real legal entity that was operated as a separate legal entity. (Watson Tr. 194:1-9)

Based upon the material undisputed facts before the court, the court is unable to find that RS, LLC and RSC were "alter egos" of each other such that the separate legal identity of RS, LLC should be ignored.

## 2. Justice Requires Recognizing the Substance of the Relationship over the Form Because the Corporate Fiction is sued to perpetuate a fraud or defeat a rightful claim

The second element of reverse piercing requires a determination that the corporate "fiction" has been used to perpetuate a fraud or defeat a rightful claim. Here, Plaintiff argues that there is sufficient evidence to support a claim that **[\*14]** PlanningEdge, LLC was used by Defendants to perpetuate a fraud upon WFT. The evidence establishes that RS, LLC the predecessor to PlanningEdge, LLC, was formed for the purpose of certain tax advantages available to the LLC. The undisputed evidence is that Watson specifically agreed and approved both the formation of RS, LLC as well as the transfer of all assets of RSC to RS, LLC. The undisputed evidence before the court is that the LLC was not created or designed to defraud investors nor was it created as a "sham." Watson acknowledged in his deposition that he understood that as a result of the transfer of assets, RSC and RS, LLC were two distinct legal entities and would have to file separate tax returns. Watson further testified that RS, LLC was operated as a separate legal entity.

---

[1] RS, LLC was a guarantor on the Guaranty Bank loan and it is not surprising that the loan proceeds were used for RS, LLC operations after the transfer of assets.

[2] As observed in *Yoder*, courts generally are less likely to pierce a corporate veil when a consensual, contract-like transaction is involved than when a nonconsensual, tort-like transaction is involved. *Cascade Energy & Metals Corp. v. Banks, 896 F.2d 1557, 1577 (10th Cir. 1990)*(applying Utah law).

Case No. 1:25-cv-02937-NYW-TPO    Document 50-2    filed 04/13/26    USDC Colorado
pg 8 of 13

Page 7 of 12
2018 Colo. Dist. LEXIS 3695, *14

Plaintiff argues that even if there was a valid initial purpose for formation of RS, LLC the corporate form may nevertheless not thereafter be used to perpetuate a fraud. *Citing McCallum Family, LLC v. Winger, 221 P.3d 69 (Colo.App. 2009)*. In order to establish this element Plaintiff must establish that the corporate form itself is a fiction used to perpetuate a fraud or to defeat a rightful claim.

The material undisputed facts before the court do not establish that **[\*15]** either the initial formation of RS, LLC or continuing existence of PlanningEdge, LLC was used to perpetuate a fraud on WFT. Rather, the evidence establishes that when Watson resolved his claims against RSC and accepted the promissory note in settlement of his claim, Watson knew that RSC, alone was solely responsible for payment of the promissory note and he knew that RSC had no assets other than its membership interest in RS, LLC. Further, Watson knew that the promissory note was unsecured and that there were no guarantors. Watson knew that in order for RSC to be able to pay amounts due under the promissory note the LLC would need to become profitable and there would need to be distributions made to the parent, RSC. Watson acknowledged that there was uncertainty with regard to payment under the unsecured promissory note and whether RS, LLC would ever become profitable. Based upon the evidence before the court, the court is unable to conclude that the corporate form was used to perpetuate a fraud or defeat a rightful claim.

### 3. An equitable result is achieved by piercing

As to the third element, it must be shown that equity will be achieved by piercing the corporate veil. For many of the **[\*16]** reasons set forth above, the material undisputed facts do not support a conclusion that equity would

be achieved by allowing WTF to pierce the corporate veil to make PlanningEdge, LLC responsible for the debt of RSC.

### B. Plaintiffs CUFTA Claims

Plaintiff brings claims under four separate subsections of the Colorado Uniform Fraudulent Transfer Act (hereafter "CUFTA"), seeking in each claim to void the asset transfer (voluntary surrender) from PlanningEdge, LLC to Reader, Vinton, and the Drury L. Vinton Trust and the subsequent transfer of those assets to Acquisition Corp. See C.R.S. *§ 38-8-105(1)(a), C.R.S. § 38-8-105(1)(b), C.R.S. § 38-8-106(1)*, and *C.R.S. § 38-8-106(2)*. Plaintiff's first two claims assert a fraudulent transfer pursuant to *C.R.S. § 38-8-105(1)(a)* and *(b)*, which provide:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (I) Was engaged or was about to engage in a business or a transaction **[\*17]** for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
>
> Plaintiff's third CUFTA claim is made pursuant to *C.R.S. § 38-8-106(1)*, which

provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Plaintiff's fourth CUFTA claim is made pursuant to *C.R.S. § 38-8-106(2)*, which provides:

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

The court first observes that the undisputed evidence does not support a claim that the **[*18]** initial transfer of assets from RSC to RS, LLC was a fraudulent transfer as to WFT's claim on the promissory note. The undisputed evidence before the court is that the transfer of assets of RSC to RS, LLC was for the legitimate purpose of advantageous tax considerations. Watson specifically acknowledges this fact in his deposition. Further, because the transfer of assets predated execution of the promissory note by approximately a year, there is no evidence before the court of an actual intent to hinder, delay, or defraud WFT who was yet to be a creditor of RSC. Watson's active participation and approval of the transfer of assets belies any evidence of intent to defraud. Further, there is no evidence before the court that the membership interest granted to RSC in RS,

LLC was not reasonably equivalent value. Finally, as to Plaintiff's claims under *C.R.S. §38-8-106(1)* and *(2)* the obligation or debt must be in existence prior to the challenged transfer which is not the case with regard to the initial transfer of assets from RSC to RS, LLC.

As to the subsequent transfers challenged by Plaintiff, Defendants argue that Planning Edge LLC f/k/a RS, LLC was never a "debtor" with regard to WFT's claim for payment **[*19]** under the promissory note and therefore there can be no fraudulent transfer. All four sections of CUFTA relied upon by Plaintiff to establish a fraudulent transfer require evidence of a transfer made by a "debtor." A debtor is defined in *C.R.S. §38-8-102(7)* as a "person liable on a claim." Defendants argue that because RSC alone was liable to WFT with regard to payment under the promissory note, PlanningEdge, LLC was not a debtor. In support of their position Defendants rely upon the holding in *Vickery v. Evelyn v. Trumble Living Trust, 277 P.3d 864 (Colo.App. 2004)*. Defendants further argue that the common law concept of veil piercing cannot be used to satisfy the elements of a statutory claim under CUFTA. Defendants do not, however, cite any authority to support this argument.

In response, WFT argues that under an "alter-ego" theory PlanningEdge, LLC may be determined to be a "debtor" for purposes of liability under CUFTA. In support of its position, Plaintiff relies on the holding in *Great Neck Plaza, L.P. v. Le Peep Rests., LLC, 37 P.3d 485 (ColoApp. 2001)* In *LePeep* the Colorado Court of Appeals was confronted with the issue as to whether the Plaintiff judgment creditor could assert an "alter-ego" theory and fraudulent transfer claims in the context of garnishment proceedings. The court specifically allowed Plaintiff to argue and **[*20]** considered alter-ego theories as well as fraudulent transfer theories to identify the

appropriate judgment debtor and owner of garnished funds. Accordingly, it appears to the court that the court may properly consider whether or not RSC and PlanningEdge, LLC f/k/a RS, LLC were alter-egos of each other in determining whether or not PlanningEdge, LLC is a "debtor" for purposes of the statutory elements of Plaintiff s CUFTA claims.

As noted above, the court concludes that the material undisputed facts do not support a claim that PlanningEdge, LLC and RSC were "alter egos" of each other. As a result, PlanningEdge, LLC was not a debtor of WFT for purposes of liability with regard to Plaintiffs CUFTA claims and so plaintiff's claims for liability under CUFTA must fail.

Defendants also argue that the undisputed material facts do not support a claim for CUFTA liability under *C.R.S. §38-8-105(1)(b)* for the following reasons: (1) the debtor, PlanningEdge, LLC did not transfer its assets, but rather surrendered the assets as a result of the foreclosure of a valid security interest, (2) the transfer involved the exchange of reasonably equivalent value, and (3) Plaintiff cannot demonstrate that as a result of the surrender **[*21]** of assets PlanningEdge, LLC was left with assets that were unreasonably small considering the debtor's on-going business operations or the transaction left PlanningEdge, LLC with additional debt beyond its ability to pay.

Because the court has determined that PlanningEdge, LLC was not a "debtor" of WFT, the court need not address Defendants additional arguments under *C.R.S. §38-8-105(1)(b)*. However, the court does note that there appear to be legal as well as factual issues as to whether a voluntary surrender of the assets may constitute a "transfer" under CUFTA, whether the transfer was for reasonably equivalent value, and whether the voluntary surrender of assets to Reader and

Vinton was "enforcement of a security interest in compliance with the provisions of the Uniform Commercial Code." Because the court has concluded that PlanningEdge was not a "debtor" or liable to WFT on the promissory note, the court does not decide these issues.

Finally, Defendants argue that WFT's CUFTA claims under *C.R.S. §38-8-106(1)* and *(2)* fail because the voluntary surrender of assets was not a "transfer" and Plaintiff's claim under *subsection (2)* further fails because the surrender of assets to Reader and Vinton was not a transfer to "insiders." **[*22]** Again, the court does not decide these issues having determined that PlanningEdge, LLC was not the alter ego of RSC or a "debtor" with regard to the obligation to WFT.

## C. Successor Liability

Plaintiff next asserts a claim of successor liability asserting that PlanningEdge, LLC was the successor to RSC, and that ultimately PE Acquisition Corp. and PlanningEdge Corporation have successor liability for the debt to WFT. As a general proposition, a corporation that acquires the assets of another corporation does not become liable for its debts. *Alcan Aluminum Corp, Metal Goods Division, v. Electronic Metal Products, Inc., 837 P.2d 282 (Colo.App. 2002)* However, successor corporations are liable if one of the following exceptions apply: (1) the successor expressly or impliedly assumes liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the successor is a mere continuation of the seller; or (4) the transfer is for the fraudulent purpose of escaping liability. *Id. See also*, CMCB *Enters., Inc. v. Ferguson, 114 P.3d 90, 93 (Colo.App.2005)*.

Based upon the evidence before the court there is no evidence that PlanningEdge, LLC

2018 Colo. Dist. LEXIS 3695, *22

either expressly or impliedly assumed the liabilities of RSC or debt to WFT. Further there is no evidence before the court that the transfer of assets was intended to be a merger or consolidation **[\*23]** of the corporations. Plaintiff argues, however, that both PlanningEdge, LLC and PE Acquisition Corp constitute a "mere continuation" of RSC. The test for determining successor liability based upon a "mere continuation' theory is whether the purchasing corporation is, in effect, a continuation of the selling corporation, and not whether there is a continuation of the seller's business operations. *CMCB Enterprises, Inc. v. Ferguson, 114 P.3d 90 (Colo.App. 2005)*.

Defendants argue that the undisputed material facts establish that PlanningEdge, LLC was not a mere continuation of RSC, that the transfer to PlanningEdge, LLC was supported by consideration, and that the foreclosure of security interests by Vinton and Reader was supported by consideration. Further, Defendants argue that in order to establish successor liability, Plaintiff must demonstrate that each "entity" in the line of succession meets the necessary elements of successor liability, *citing Crutchfield v. Marine Power Engine Co., 2009 OK 27, 209 P.3d 295 (Okla. 2009)*. Here although Plaintiff alleges a basis for successor liability, plaintiff has failed to come forward with specific evidence in response to the motion for summary judgment to support a conclusion that *each* entity in the line of succession from RSC to PlanningEdge Corporation was a successor entity. **[\*24]** Accordingly, summary judgment is appropriate with regard to plaintiff's claim for successor liability.

The fourth recognized exception to the general rule that a corporation that acquires the assets of another corporation is not liable for its debts can be found where there is evidence that the transfer is for the fraudulent purpose of escaping liability. The material undisputed facts do not support that the initial transfer from RSC to RS, LLC was for the fraudulent purpose of escaping liability with regard to the WFT debt. Indeed, the debt to WFT had not even been incurred at the time of the initial transfer. Accordingly, there are no facts to support this claim to establish successor liability.

## D. Civil Conspiracy

Plaintiff WFT also asserts claims for civil conspiracy. Civil conspiracy requires: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) an unlawful overt act, and (5) damages as the proximate result. *Jet Courier Service, Inc. v. Mulei, 771 P.2d 486 (Colo. 1989)*. Plaintiff alleges that all defendants conspired with one another for the purpose of defrauding plaintiff and transferring the assets in violation of CUFTA (Amended Complaint, ¶¶125-132).

Civil conspiracy **[\*25]** is, however, a derivative cause of action that is not independently actionable. *Double Oak Constr., L.L.C v. Cornerstone Development Int'l, L.L.C, 97 P.3d 140, 146 (Colo. App.2003)*. Because the court has determined that summary judgment is appropriate with regard to plaintiff's asserted CUFTA claims, summary judgment is appropriate with regard to the asserted conspiracy claims to transfer assets in violation of CUFTA.

## D. Breach of Fiduciary Duty

Finally, Plaintiff WFT asserts a claim for breach of fiduciary duty in the Eleventh Claim for Relief set forth in Plaintiff's Amended Complaint against Defendants Reader, Vinton, Drury Vinton Trust, Kent and Florin, as officers and directors of RSC. In particular, Plaintiff alleges as follows:

2018 Colo. Dist. LEXIS 3695, *25

174. The transfer to Paul D. Reader and Drury L. Vinton, and the Drury L. Vinton Trust and the subsequent transfer to PE Acquisition Corp. (now known as Planning Edge Corporation) cause or contributed to RockySoft Corporation's insolvency.

175. Officers and directors of an insolvent corporation owe creditors a duty to avoid favoring their own interests over creditors' claims.

176. Defendants Paul D. Reader, Drury L. Vinton, Mark R. Kent, and Bradley Florin, as Officers and directors of RockySoft Corporation favored their own interests over creditor WFTs' **[\*26]** claims.

177. The Defendants were acting as a fiduciary of the plaintiff with respect to management and operation of the corporation RockySoft Corporation when they transferred all of the assets of PlanningEdge, LLC f/k/a RockySoft, LLC to themselves as insiders.

178. The defendants breached a fiduciary duty to the plaintiff;

Defendants first argue that Plaintiff's fiduciary claims fail because corporate officers and directors do not owe fiduciary duties to creditors such as WFT. *C.R.S. § 7-108-401(5)*. *C.R.S. §7-108-401(5)*, provides that directors "shall not have any fiduciary duty to any creditor arising only from the status as a creditor." Accordingly, Defendants argue that summary judgment should be granted with regard to Plaintiff's breach of fiduciary claims as a matter of law. Plaintiff argues that the holding in *Alexander v. Anstine, 152 P.3d 497 (Colo. 2007)* remains good law and provides a basis to support Plaintiff's claim for breach of fiduciary duty. The Court in *Anstine* held:

Under the common law, when a corporation becomes insolvent, a duty

arises in its directors and officers to the corporation's creditors. *Crowley v. Green, 148 Colo. 142, 147, 365 P.2d 230, 232-33 (1961)*. It has been said that directors and officers of an insolvent corporation are "trustees" for the corporation's creditors. Id. The trustee role with regard **[\*27]** to creditors does not encompass the full set of fiduciary duties owed by directors and officers to shareholders of a solvent corporation. Rather, it is a limited duty that requires officers and directors to avoid favoring their own interests over creditors' claims, [citations omitted].

Based upon the briefing of the parties, it is far from clear whether or not the common law duty survives the passing of *C.R.S. § 7-108-401(5)*. Plaintiff further argues that the holding in *Weinstein v. Colborne Foodbotics, LLC, 302 P.3d 263, 2013 CO 33 (Colo. 2013)* in which the court declined to address this issue, suggests that the duty of officers and directors to avoid favoring their own interests over creditor claims likely has not been abrogated. Plaintiff also cites *Kirzhner v. Silverstein, 2011 U.S. Dist. LEXIS 106139, 2011 WL 4382560 (D. Colo. 2011)* to support this view. Defendants argue based upon the undisputed evidence that Defendants did not assert an unfair preference with regard to WFT's claim against RSC. First, Defendant's argue that the undisputed evidence is that WFT was an unsecured creditor of RSC (not of RS, LLC). Second,

Defendants argue that RSC had no interest in the assets of RS, LLC, because under Colorado law a member of an LLC has no interest in the property owned by the LLC. *Meyer v. Haskett, 251 P.3d 1287 (Colo.App. 2010)*; *Ecco Plains, LLC v. United States, 728 F.3d 1190 (10th Cir. 2013)*. Accordingly, Defendants argue that as officers and directors of RSC Defendants **[\*28]** did not owe a fiduciary duty to WFT as it related to the

2018 Colo. Dist. LEXIS 3695, *28

assets of RS, LLC. Finally, Defendants argue that Defendants Reader and Vinton had valid liens as secured creditors of PlanningEdge, LLC having replaced the Guaranty Bank loans as well as the security for those loans. While Plaintiff argues in response to the motion for summary judgment that "it is very much disputed' as to whether Reader and Vinton had valid liens, the evidence before the court does not appear to be in dispute. Based upon the material undisputed facts before the court, plaintiff WFT has failed to establish that defendants owed a fiduciary duty with regard to the assets of PlanningEdge, LLC and even if such a duty existed, that defendants breached any fiduciary duty. Accordingly, summary judgment is appropriate with regard to plaintiff WTF's breach of fiduciary duty claims.

## ORDER

For the reasons set forth, the court hereby grants Defendants' motion for summary judgment.

SO ORDERED: December 22, 2018.

BY THE COURT:

/s/ Stephen J. Jouard

Stephen J. Jouard

District Court Judge

---

**End of Document**