**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CESAR LOPEZ, JANICE POTTER, BRYAN SMITH, KEVIN CURRY, DANIEL STONE, SABRINA DITMORE, AARON HANSON, BRANDY STEWART, and RENARDO RISPER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAKEFIELD & ASSOCIATES, LLC and REVCO SOLUTIONS, INC.,<br><br>Defendants. | Civil Action No. 1:25-cv-02937-NYW-TPO |

<u>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**</u>

Defendants Wakefield & Associates, LLC ("Wakefield") and RevCo Solutions, Inc. ("RevCo") (together, "Defendants") respectfully submit this Reply Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Cesar Lopez ("Lopez"), Janice Potter ("Potter"), Bryan Smith ("Smith"), Kevin Curry ("Curry"), Daniel Stone ("Stone"), Sabrina Ditmore[1] ("Ditmore"), Aaron Hanson ("Hanson"), Brandy Stewart ("Stewart"), and Renardo Risper ("Risper") (collectively, "Plaintiffs") Second Amended Consolidated Class Action Complaint (the "SAC" or "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6).

Not every data breach results in an injury, let alone an injury directly traceable to the breach. "[A] mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft." *In re Progressive Leasing Breach Litig.*, No. 2:23-cv-00783-DBB-CMR, 2025 WL 213744, *10 (D. Utah Jan. 16, 2025). Plaintiffs also ask this Court to find that all of them have standing because *one* of them asserts conclusory allegations about innocuous activity they argue is "misuse." An examination of the pleading reveals that the allegations do not constitute misuse and do not evidence an imminent risk of misuse for the remaining Plaintiffs. Regardless, no Plaintiff plausibly alleges a concrete injury traceable to the breach. Thus, the Complaint should be dismissed for lack of standing. Separately, the Complaint should be dismissed because Plaintiffs fail to plausibly state a claim upon which relief can be granted. Finally, Plaintiffs failed to address several of Defendants' arguments in their response, as noted below. By ignoring those arguments, Plaintiffs have waived any opposition to them. *See Gays Against Groomers v. Garcia*, 758 F. Supp. 3d 1298, 1312 n.6 (D. Colo. 2024).

---

[1] On May 1, 2026, Plaintiff Sabrina Ditmore filed a notice of voluntary dismissal of her claims without prejudice. ECF 51.

1093161\329632142.v1

**I.    Plaintiffs Lack Standing And The SAC Must Be Dismissed Under 12(B)(1).**

    **A.    <u>No Plaintiff alleges actual or attempted fraud or identity theft that can substantiate a present or imminent injury in fact.</u>**

        *1.    Lopez did not allege fraud or identity theft.*

As an initial matter, Plaintiffs cannot argue new, unalleged facts in a response brief. *Rahman v. Billingsly*, No. 21-cv-02625-KLM, 2023 WL 2018905, at *6 (D. Colo. Feb. 14, 2023) ("[T]he Court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."). The SAC does not allege, as Plaintiffs argue in their brief, that Lopez was contacted to "complete a loan application initiated using his Social Security number and other Private Information." ECF 52 at 7; *compare* with ECF 44, ¶ 71. The four corners of the SAC confirm that Lopez's allegations do not describe fraud, identify theft, or "misuse" and cannot substantiate an injury-in-fact.

In an effort to legitimize Lopez's threadbare allegations, Plaintiffs argue that they need "not allege a litany of specific details not required by any case law or federal rule." ECF 52 at 7. Plaintiffs are wrong. Courts, including courts in the 10th Circuit, look to the specifics of an allegation to determine standing. *See, e.g., Progressive,* 2025 WL 213744, at *12 (examining whether allegations of loan applications confer standing).[2]

The allegations in *Progressive* demonstrate the insufficiency of Lopez's allegations here. In *Progressive*, the plaintiffs alleged specific alerts, on specific dates, from established credit bureaus (CreditKarma, Experian), that specific lenders (Wells Fargo, American Express) were trying to open accounts in the plaintiff's name. Ex. 1, *Progressive* Complaint, ¶¶ 193-97. Here, Lopez was contacted *not* about taking out a loan, but about

---

[2] Plaintiffs' counsel are aware of the specificity of the pleading in *Progressive* as two of the firms represent plaintiffs in this matter and *Progressive*.

1093161\329632142.v1

"completing the purchase of a vehicle." ECF 44, ¶ 71. No date is given, just "spring 2025." *Id.* There is no allegation that Lopez's caller mentioned a loan, a loan application, or that Lopez's SSN was used. There are no allegations that a lender was contacted about or reviewed an application. Lopez does not allege that any other PII necessary to take out a car loan was involved. In short, unlike *Progressive,* Lopez's allegations do not describe fraud, identity theft, or misuse that constitute an injury in fact.

Plaintiffs do not address Defendants' argument that the phone call could have been a mere phishing attempt and a result of data "like phone numbers, emails, addresses, etc." being "found elsewhere on the internet." ECF 44, ¶ 220. As argued above, Plaintiffs have waived this issue, confirming that Lopez has not alleged any fraud, identity theft, or misuse that could confer standing.

2.    *Lopez's allegations do not confer standing on any other Plaintiff.*

Plaintiffs do not argue that any other Plaintiff besides Lopez alleged attempted fraud or identity theft. Instead, the other Plaintiffs rely entirely on Lopez's allegations to bootstrap their claim that they face an imminent risk of future harm. Specifically, Plaintiffs assert that "[w]here there are 'plausible allegations of actual misuse by some Plaintiffs . . . the remaining named Plaintiffs' injury is plausibly imminent and substantial for pleading purposes.'" ECF 52 at 8 (*quoting Progressive*, 2025 WL 213744, at *13). Even if Lopez's allegations about a single phone call that may have been a mere phishing attempt using Lopez's publicly available phone number plausibly alleged misuse or an injury in fact (which Defendants deny), they cannot support standing for any other Plaintiff or the putative class. ECF 44 at 71; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each

3

claim that they press and for each form of relief that they seek").

As mentioned above, a review of *Progressive* reveals that the allegations in that case are materially different than what Lopez alleges. In *Progressive*, Plaintiffs alleged that their SSNs and bank routing and checking account numbers were acquired. *Progressive,* 2025 WL 213744, at *10. Two named plaintiffs had unauthorized and unreimbursed charges on their bank accounts. *Id.* at *12-13. A third suffered unauthorized charges to her credit card. *Id.* And a fourth had multiple unauthorized attempts to open loans in his name. *Id.* Three of these four plaintiffs had multiple hard inquiries on their credit reports which were inaccurate. *Id.* Not only did *Progressive* involve "misuse," but the "misuse" in *Progressive* involved data "in the same dataset" as the breach, and the court concluded that "Plaintiffs plausibly pled a higher likelihood that their own PII will be misused." *Id.* at *13.

The same cannot be said to have occurred here. First, there were no unauthorized bank charges, unauthorized credit card use, or inaccurate hard inquiries on credit reports; there was no misuse at all. Lopez's alleged phone call does not describe fraud, identity theft, or misuse, and certainly is not comparable to the allegations in *Progressive*. Separately, unlike *Progressive,* there are no facts alleged by any Plaintiff that any of the data *at issue in this breach* was misused. Plaintiffs admit as much for all Plaintiffs except Lopez, and Lopez does not allege any facts that his data at issue in this breach was even mentioned in the phone call. As discussed above, Lopez does not allege any facts that supports that the call was anything more than a phishing communication resulting from something other than this breach. *See* ECF 44, ¶¶ 75, 220. Thus, it cannot be said that there is a higher likelihood of misuse for the other named Plaintiffs here. Lopez's

4

allegations do not describe "misuse," and do not substantiate a present or imminent future injury-in-fact for him or any other Plaintiff.

B.    <u>Plaintiffs' dark web allegations do not substantiate a present or imminent future injury.</u>

Plaintiffs misstate their dark web allegations to argue that they all face a present and imminent injury that confers standing. ECF 52 at 10. Plaintiffs are wrong. Additionally, Plaintiffs fail to respond to Defendants' arguments, effectively admitting that the dark web allegations are deficient and do not confer standing.

Plaintiffs argue "*two* different cybercriminal groups posted on the dark web that they had obtained the Private Information from Defendants' systems, which included a repository link of the private data." ECF 52 at 10, citing ECF 44, ¶¶ 39-40. However, like the plaintiffs in *Progressive,* this is an "overstate[ment] of the[ir] allegations" in their brief. *Progressive,* 2025 WL 213744, at *10. Paragraphs 39-40 allege only that (i) a ransomware group obtained data from Wakefield and (ii) a ransomware group "listed Wakefield on its dark web site with a now offline repository link." ECF 44, ¶¶ 39-40. They "do not state that any of the named Plaintiffs' own personal information was contained within that sample." *Progressive,* 2025 WL 2137441, at *10. Moreover, Plaintiffs waive this issue by failing to respond to Defendants' argument that the screenshots in paragraphs 39-40—the screenshots that purportedly evidenced the so-called "publication" of data—do not support that any of their data was published. ECF 50 at 10.

Plaintiffs also do not respond to Defendants' argument that their equivocation that "there is a strong probability" that the data "ha[s] been placed, *or will be placed*, on the dark web for sale" is insufficiently concrete to constitute an injury in fact. ECF 44, ¶¶ 252, 255 (emphasis added); *see, e.g., Progressive,* 2025 WL 213744, at *10 (allegation that

5

belief that PII "may end up for sale on the dark web" was not enough to confer standing); *Dougherty v. Bojangles' Rests., Inc.*, No. 3:25-CV-00065-KDB-DCK, 2025 WL 2810673, at *4 (W.D.N.C. Sep. 30, 2025) (equivocating between publication and "imminent" publication did not constitute a concrete injury). Plaintiffs effectively admit that Lopez, Smith, Ditmore, Hanson, Stewart, and Risper do not claim that their specific data was published to the dark web. ECF 52 at 10. While Curry, Potter, and Stone claim to be notified that unspecified data was found on the dark web, they and all Plaintiffs equivocate about whether data was actually published. *Compare* ECF 44, ¶¶ 86, 116, 131 *with* ECF 44, ¶¶ 252, 255. They also do not allege that any of the data "found" on the dark web was the data at issue in *this* breach. *Cf.* Ex. 1, *Progressive* Compl., ¶¶ 11, 152 (allegations that a sample of the exfiltrated data set, including one plaintiff's data at issue in the breach, was published to the dark web). Thus, Plaintiffs' flimsy dark web allegations cannot substantiate a present or imminent injury sufficient to confer standing.

C.    <u>Plaintiffs have not and cannot substantiate an imminent future injury.</u>

As explained above, neither Lopez's phone call allegations nor the equivocating dark web allegations plausibly substantiate an imminent, concrete injury-in-fact. Plaintiffs' only other attempt to argue they face an imminent risk of future harm fails. ECF 52 at 9-10. Plaintiffs cite four decisions to argue that "the likelihood of future fraud or identity theft is objectively imminent" merely because "information with high fraud potential" was at issue in the breach. *Id*. Three of the cited decisions cases are inapposite, as they pre-date and/or did not follow *TransUnion,* which "marked a shift in the Court's standing

1093161\329632142.v1

jurisprudence."[3] *Dinerstein v. Google, LLC*, 73 F.4th 502, 516 (7th Cir. 2023); *see also Popa v. Microsoft Corp.,* 153 F.4th 784, 792 (9th Cir. 2025) (refusing to apply pre-*TransUnion* framework). The only other decision does not stand for the proposition that Plaintiffs cite it for. *F.S. v. Captify Health, Inc.*, No. 23-1142-DDC-BGS, 2024 WL 1282437, at *3-4 (D. Kan. Mar. 26, 2024) (plaintiff did not face imminent risk of harm without any data misuse). Thus, Plaintiffs cannot plausibly allege a concrete, imminent risk of future harm based on the "fraud potential" of the data at issue in the breach, either.

Regardless, Plaintiffs do not attempt to respond to Defendants' argument that the passage of time—at this point, 15+ months—"without the alleged future harm actually occurring undermines any argument that the threat of harm is immediate, impending, or otherwise substantial." *In re Zappos.com, Inc.,* 108 F. Supp. 3d 949, 958 (D. Nev. 2015)*.* As argued above, their failure to respond waives the issue.

D.    <u>Without an imminent risk of future harm, lost time or money mitigating the effects of the breach and emotional distress cannot constitute injuries in fact.</u>

Plaintiffs do not dispute that without an imminent risk of future harm, they "cannot 'manufacture standing' simply by 'incur[ring] certain costs as a reasonable reaction to a risk of harm.'" *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 994 (W.D. Okla. 2021) (*citing Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013)). Thus, Plaintiffs' claimed lost time or money on credit monitoring, mitigation efforts, and emotional distress that were responses to a hypothetical future harm cannot confer standing. *Henderson v.*

---

[3] *See Sweet v. BJC Health Sys.,* No. 3:20-CV-00947-NJR, 2021 WL 2661569, at * 3-4 (S.D. Ill. June 29, 2021) (published 4 days after *TransUnion* opinion and contains no discussion or acknowledgement of *TransUnion*); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 387–91 (6th Cir. 2016) (pre-dates *TransUnion*); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) (same).

7

*Reventics, LLC*, No. 23-cv-00586-MEH, 2024 WL 5241386, at *5 (D. Colo. Sep. 30, 2024); *Masterson v. IMA Fin. Grp., Inc.*, No. 2:23-cv-02223-HLT-ADM, 2023 WL 8647157, at *7 (D. Kan. Dec. 14, 2023).

> E.    Plaintiffs' response confirms that their remaining alleged "injuries"—spam, loss of privacy, and diminished value of information—do not confer standing.

*Henderson,* a district court decision within the Tenth Circuit, confirms that Plaintiffs' alleged "injuries" of spam and diminished value of PII are *not* injuries in fact and cannot confer standing to sue. *Henderson*, 2024 WL 5241386, at *17-19 (collecting cases that diminution in value of PII and spam do not confer standing). Plaintiffs do not attempt to address the *Henderson* decision or offer any basis as to why it would not apply here. Similarly, Plaintiffs do not attempt to distinguish their claims from other Tenth Circuit district court decisions cited in Defendants' motion refusing to confer standing based on an alleged "loss of privacy." *See, e.g., F.S.,* 2024 WL 1282437, at *4.

*Progressive,* the only decision Plaintiffs cited from within this circuit to argue that a generic claim of "loss of privacy" is a concrete injury in fact, does not support their argument. *Progressive* involved factually-supported claims that specific named plaintiffs' data—data that was at issue in the breach—was published to the dark web, and that was deemed to be "akin to" the concrete harm of public disclosure of private information. *Progressive,* 2025 WL 213744, at *11. That is not the case here. As set forth above, Plaintiffs do not plausibly allege that *any* data from Defendants' clients' patients—let alone any of the named Plaintiffs data—has been published. There is no "free-roaming" common law right to privacy. *Popa,* 153 F.4th at 792. Thus, Plaintiffs' alleged loss of privacy "is not a concrete harm that can provide the basis for Article III standing." *C.C. v. Med-Data Inc.,* No. 21-2301-DDC-GEB, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022).

8

F.    No Plaintiff plausibly alleges traceability to this Data Breach.

Plaintiffs argue that they met the "low burden" to satisfy traceability. ECF 52 at 15-16. However, this is (again) based upon an overstatement of the SAC allegations. There is no allegation of "misuse"—let alone misuse "involv[ing] the precise information exfiltrated from Defendant's systems." *Id.* at 17. There is no allegation in the Complaint that Lopez's social security number was misused. *See* ECF 44, ¶ 71. The person who called Lopez about "completing the purchase of a vehicle" did not mention his social security number. *Id.* The use of the social security number is a conclusion that he jumped to without any factual basis. Indeed there is no allegation that any of the purported injuries sustained by the named Plaintiffs (*e.g.*, alleged PII "found" on the dark web, spam, phishing attempts) involved data that matched their specific data at issue in the breach. This connection is required to establish traceability. *See Henderson*, 2024 WL 5241386, at *8 (a failure to plead "the kind of information necessary to open a credit card" was insufficient to trace an unauthorized attempt to open a credit card to the data breach in the case). Relatedly, with respect other allegations of spam and phishing, including Lopez's alleged phone call, Plaintiffs do not dispute that contact information is publicly available separate and apart from *this* Data Breach. *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023). Thus, claiming traceability to *this* Data Breach is not plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (plaintiffs must allege facts to show plausibility, as opposed to mere possibility of relief).

Plaintiffs' failure to address Defendants' traceability arguments also confirms that their claims are not plausible. Plaintiffs do not attempt to respond to Defendants' argument that none of their alleged injuries can be fairly traceable to *this* data breach

9

when none of the Plaintiffs allege that their data was not impacted in a *different* data breach—even as Plaintiffs acknowledge that the prevalence of data breaches "has increased dramatically in recent years," with over 350 million "victims" of data breaches in the year 2023 alone, and in 2024, over 276 million records compromised in just *healthcare* data breaches. ECF 44, ¶ 52.

Finally, none of the Plaintiffs attempt to distinguish their cursory allegations that "after the breach" they were "injured," from the deficient allegations in *Zerbe* or *Henderson. See Zerbe v. IMA Fin. Grp., Inc.*, No. 2:24-cv-02026-HLT-GEB, 2024 WL 3677395, at *6 (D. Kan. Aug. 6, 2024) (no traceability if the "only link" between the harm and the breach is that it "occurred after the data breach"). As argued above, Plaintiffs' failure to address these arguments in their response brief waives the issue.

G.    Plaintiffs lack standing to seek injunctive relief and have failed to state a plausible claim for such relief in the SAC.

Plaintiffs' assert throughout their brief that they are pursuing injunctive relief. *See e.g.*, ECF 55 at 18-19. Notably, the paragraphs in the SAC Plaintiffs cite have nothing to do with the injunctive relief they claim they are seeking. *See id.* Plaintiffs do not seek injunctive relief in the SAC and cannot amend the SAC by raising it in their response. *See* ECF 44, *generally*; *Rahman,* 2023 WL 2018905, at *6. Even if Plaintiffs had sought injunctive relief in the SAC, Plaintiffs lack standing to seek it and have failed to state a plausible claim for it. Accordingly, this Court should dismiss it.

Plaintiffs allegedly seek an injunction that "would require data encryption, deletion of their Private Information without a reasonable justification for its retention, maintaining a comprehensive information security program to protect the Private Information, employee training, and engaging auditors and personnel to run automated security

10

monitoring." ECF 52 at 18. Yet, since the Breach, Wakefield has taken additional steps and implemented additional measures to secure their network. ECF 15-1. Plaintiffs do not allege any facts suggesting Defendants' current, post-breach cybersecurity system, training, or policies are inadequate such that Plaintiffs are at a risk of harm—let alone face an imminent risk of harm. *TransUnion*, 594 U.S. at 435 (a person can pursue injunctive relief to prevent a future harm "so long as the risk of harm is sufficiently imminent and substantial"). The court in *Progressive* refused to find standing for injunctive relief based on similar allegations, noting that if the risk of a subsequent breach based on a prior breach was "deemed sufficiently imminent to justify injunctive relief, virtually every company and government agency might be exposed to requests for injunctive relief like the one plaintiffs seek here." *Progressive*, 2025 WL 213744, at *14 (internal citations omitted). Thus, even if they asserted a claim or prayer for injunctive relief in the SAC, Plaintiffs lack standing to seek it and have failed to state a plausible claim for it.

## II.    Plaintiffs' Claims Are Inadequately Pled.

### A.    Plaintiffs' claims against RevCo are insufficient under Rule 12(b)(6).

Plaintiffs cannot plead a series of bare legal conclusions and then seek to justify them in discovery. "'Rule 8' . . . 'marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *EEOC v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 150 (10th Cir. 2022) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, (2009)). Plaintiffs claim that they should be allowed to proceed to discovery against RevCo because "the precise terms of the merger or acquisition" are not public. ECF 52 at 21. Plaintiffs acknowledge that Courts will consider allegations pled

11

upon information and belief in such situations: "Twombly and Iqbal's heightened standards do not prevent a plaintiff from pleading this way, 'where the facts are peculiarly within the possession and control of the defendant.'" *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1181 (D. Utah 2021) (*quoting Arista Recs., LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010)); ECF 52 at 21. Here, however, the matters pled on information and belief are not solely within the Defendant's knowledge and control and should not be credited by the Court. Some functions are alleged to be "consumer-facing," meaning consumers have access to the information. ECF 44, ¶ 63. Another area of RevCo's alleged control over Wakefield involves "communications after the data breach." *Id.* Communications involve, by their nature, transmitting information to others, meaning Defendants do not exercise sole dominion over the information. If these indicia of control were not solely within the Defendants control, they should not be pled on information and belief, and, more importantly, Plaintiffs should be able to plead RevCo's control of Wakefield with more particularity. Plaintiffs have not, and their claims against RevCo should be dismissed.

Plaintiffs' conclusory allegations are insufficient to allege successor liability at the pleading stage. In *Roark-Whitten*, the issue was whether the plaintiff had pled notice of its claims with particularity sufficient to hold the first successor corporation liable. *See Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 150, 157-159. The 10th Circuit found that a bare conclusion that the first successor "had notice" was insufficient and dismissed the claims. *Id.* at 159. The court noted that there was no allegation that the first successor failed to exercise due diligence or that the first successor should have, but failed to, conduct an internet search for any relevant claims. *Id.* The same logic holds true here. Bare allegations that "the merger combined Revco and Wakefield" or that RevCo is liable

12

for Wakefield's actions "to the extent Revco assumed, controlled, directed, or ratified Wakefield's operations or conduct" are insufficient. ECF 44, ¶¶ 60, 64. There are no allegations that RevCo controlled or directed Wakefield's cybersecurity at the time of the breach; that RevCo knew about the breach at the time it consummated the transaction; or that RevCo agreed to assume Wakefield's liabilities. Thus, Plaintiffs' claims against RevCo should be dismissed.

B.      The Economic Loss Rule applies and bars Plaintiffs' tort claims.

Plaintiffs argue that the economic loss rule does not apply because the duty they allege Defendants owed them is not a contractual duty. ECF 52 at 22. The economic loss rule bars tort claims that arise from a contractual duty absent an independent duty of care under tort law and applies to third-party beneficiaries. *S K Peightal Eng'rs, Ltd. v. Mid Valley Real Estate Solutions V, LLC*, 2015 CO 7, ¶ 7, 342 P.3d 868. Here, Plaintiffs alleged in their factual background section that in collecting and maintaining Plaintiffs' information, "Wakefield *agreed* it would safeguard the data in accordance with its internal policies, state law, and federal law. . . ." ECF 44, ¶ 30 (emphasis added). Thus, Plaintiffs' allegations establish that the duty the Plaintiffs seek to enforce arises out of the contracts between Defendants and their clients, which Plaintiffs admit in their response. *Id.*, ¶¶ 29-30; ECF 52 at 30. Because Plaintiffs' alleged losses arise out of these contractual duties, the economic loss rule bars their tort claims. *S K Peightal Eng'rs*, 2015 CO 7, ¶ 7.

Plaintiffs argue that even if there is a contractual duty, there exists an independent duty under tort law. ECF 52 at 25-26. Plaintiffs assert that "the FTC Act and HIPAA impose the standard of care for Defendants to implement to protect Plaintiffs' privacy." ECF 52 at 25. Yet, "the source of any duty regarding data security arises under the contract" and

13

"there is no basis in Colorado statutory or common law for imposing a duty of care related to data security." *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1084 (D. Colo. 2018). Plaintiffs' argument separately fails because "[w]here a statute does not provide for a private cause of action, a plaintiff may not pursue a claim for relief based upon the statute." *Hurtado v. Brady*, 165 P.3d 871, 876 (Colo. App. 2007). As amply put by the Denver District Court, "[a] court will not infer a private negligence per se right of action based on a statutory violation unless it discerns a clear legislative intent to create a private right of action." Ex. 2 *Teklehaimanot v. Denver Health Med. Ctr.*, 2016 Colo. Dist. LEXIS 759, at *18  (Denver Cnty. Dist. Ct. Jan. 3, 2016) (citing *Lawson v. Stow*, 327 P.3d 340, 350, 2014 COA 26 (Colo. App. 2014)).[4] There is no private right of action under either HIPAA or the FTCA. *See e.g., American Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *See also Rangel v. Indus. Claim Appeals Off. Of State*, 2023 WL 12057114, at * 4 (Colo. App. 2023) (unpublished) ("HIPAA does not create a private right of action."); Ex. 3 *Latham v. Health*, 2008 Colo. Dist. LEXIS 376, at *9 (Boulder Cnty. Dist. Ct. Oct. 1, 2008) (same); Ex. 4 *Frey v. Walmart Inc.*, 2025 Colo. Dist. LEXIS 3852, at *2 (Broomfield Cnty. Dist. Ct. Nov. 21, 2025) (same).[5] Inferring a private negligence *per se* right of action

---

[4] The Court addressed this issue in *Conceptions*. *Doe v. Conceptions Reprod. Assocs.*, No. 25-cv-00009-NYW-CYC, 2026 WL 1145600, at *7 (D. Colo. Apr. 28, 2026). However, the defendants in *Conceptions* failed to point to any Colorado case that recognized that a plaintiff cannot bring a negligence *per se* claim based on a statute that does not create a private cause of action. *Id.* Unlike the defendants in *Conceptions*, Defendants here do, and respectfully request that the Court reconsider its position. Per Civ. Prac. Stnd. 10(b)(3), a copy of the *Teklehaimanot* opinion is attached at Ex. 2.

[5] Per Civ. Prac. Stnd. 10(b)(3), copies of the *Latham* and *Frey* opinions are attached at Ex. 3 and Ex. 4.

based on either HIPAA or the FTCA contradicts clear legislative intent and the statutes' statutory scheme and structure. ECF 50 at 23-24.

Plaintiffs also incorrectly argue that a duty exists under Colorado common law by applying the factors a court uses to determine whether a duty exists in a *misfeasance* case. Yet, Colorado applies a different standard depending on whether the negligence claim is based on a defendant's active misconduct (misfeasance) or defendant's failure to act (nonfeasance). *Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002); *N.M. v. Trujillo*, 2017 CO 79, ¶ 25, 397 P.3d 370. The Complaint does not allege that the Defendants engaged in an affirmative act of misconduct; rather, the Complaint is replete with allegations of Defendants' failures to act. *See e.g.*, ECF 44, ¶¶ 8, 12. In nonfeasance matters such as this, "the existence of a duty has been recognized only during the last century in situations involving a limited group of special relationships between parties." *Trujillo*, 2017 CO 79, ¶ 26. No recognized special relationship exist between Defendants and Plaintiffs, a point which Plaintiffs do not counter and therefore waive. Plaintiffs' reliance on *Owens-Brooks* is misplaced because it involved an employer-employee relationship—a context in which Colorado recognizes a special relationship giving rise to an independent tort duty. *Owen-Brooks v. DISH Network Corp.*, No. 23-cv-01772-NYW-SBP, 2024 WL 4338133, at *14 (D. Colo. Aug. 23, 2024), *report and recommendation adopted*, 2024 WL 4333660 (D. Colo. Sept. 27, 2024). Instead, *Bellwether* and the cases the *Bellwether* court found persuasive are directly on point: there, as here, the duties at issue arose entirely out of contracts between the parties, and the courts applied the

15

economic loss rule to bar the tort claims. *Bellwether*, 353 F. Supp. 3d at 1084. [6]

Plaintiffs also argue that their economic losses, such as mitigation expenses, give rise to a negligence claim. ECF 52 at 24. But the critical inquiry under the economic loss rule is whether the Defendants owed Plaintiffs a duty under tort law independent of any contractual duty, not whether Plaintiffs' economic losses are recognized under tort law. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). Plaintiffs further argue that their tort claims survive the economic loss rule because they allege noneconomic losses. ECF 52 at 25. This argument also fails. Plaintiffs' claimed injuries of fear, worry, uncertainty, anxiety, sleep disruption, stress, and frustration are nothing more than generalized emotional symptoms that courts, including this Court, have found insufficient to constitute a cognizable noneconomic harm under Colorado tort law. *Conceptions*, 2026 WL 1145600, at *4. Similarly, Plaintiffs' claimed violation of their right to privacy, is nothing more than an end-run around the required mental state for their invasion of privacy claim that this Court should decline to permit as it did in *Conceptions*. *Id.* at *4 n. 4. Plaintiffs' remaining alleged injuries, such as damage to and diminution in value of their private information and lost time, are plainly economic in nature; Plaintiffs do not even attempt to explain how any of these constitute *physical* harm to persons or property, nor could they. *See Bellwether*, 353 F. Supp. 3d at 1084-85 (finding damage to computer data is not the sort of damages to prevent the application of the economic loss rule). Accordingly, the economic loss rule bars Plaintiff's tort claims.

C.    Plaintiffs' Negligence claim (Count I) fails.

---

[6] *Conceptions* is distinguishable because it involved a health-care provider and patient relationship—another context in which Colorado recognizes a special relationship giving rise to an independent tort duty. *Conceptions*, 2026 WL 1145600, at *1-2.

16

For the reasons set forth in Section B, *supra*, Defendants owed no duty under tort law to Plaintiffs and Plaintiffs noneconomic injuries are not cognizable injuries under Colorado tort law. Plaintiffs' remaining theories of damages fare no better. Plaintiffs' diminished-value theory fails because they have not alleged any facts supporting the claim that the value of their personal information has diminished. As in *Conceptions*, Plaintiffs offer nothing more than the bare assertion that personal information has inherent value that the Data Breach diminished. *See* ECF 44, ¶¶ 73, 89, 103, 118, 133, 150, 171, 188, 205, 248-253. The Court should dismiss this theory for the same reasons it was rejected in *Conceptions*. *Conceptions*, 2026 WL 1145600, at * 5. Next, Plaintiffs' "lost time" theory fails because they set forth no factual allegations to support it. ECF 44, ¶¶ 11, 209, 346, 366. As in *Conceptions*, lost time standing alone is insufficient to sustain a negligence claim. *Conceptions*, 2026 WL 1145600, at * 5. Finally, Plaintiffs allege that Potter signed up for a credit monitoring service after the Data Breach. ECF 44, ¶ 86. But this expense was entirely unnecessary as Wakefield offered her free credit monitoring services. ECF 29-2 at 83. Rather than mitigating her damages, Potter chose to incur costs that Wakefield had already offered to bear. Thus, Plaintiffs' alleged injuries are insufficient to sustain a negligence claim.

In addition, Plaintiffs failed to adequately plead causation. Plaintiffs' sole argument on causation is that Potter would not have purchased Experian credit monitoring but for the Data Breach. ECF 52, at 27. As argued above, Potter did not need to purchase credit monitoring because Wakefield already offered her free credit monitoring services. Further, the purchase of a single credit monitoring service by one plaintiff does not establish causation for the wide range of injuries the SAC attributes to Defendants.

17

Plaintiffs' attempt to dismiss the hackers' criminal conduct as a non-issue is unavailing. There are no factual allegations showing that Defendants' alleged acts or omissions "set in motion" the criminal hackers' independent decision to target Defendants' systems and Plaintiffs point to none in their response. ECF 52 at 27. The cybercriminals' deliberate conduct was fully independent of any alleged negligence by Defendants and constitutes a superseding, intervening cause that severs the causal chain. As for foreseeability, Plaintiffs argue that discovery is needed. ECF 52 at 28. While it is true that Plaintiffs do not need to plead with exact detail, Plaintiffs still need to "sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Here, the Complaint fails to set forth factual allegations showing that it was foreseeable that Defendants' alleged negligence would result in injuries to others. Plaintiffs have not plausibly alleged causation, and Count I should be dismissed.

> D.      Plaintiffs' negligence *per se* claim (Count II) fails.

Plaintiffs contend that the absence of a private right of action under the statute does not bar their negligence *per se* claim. ECF 52 at 28. Plaintiffs assert that "negligence *per se* occurs when a defendant violates a statute adopted for the public's safety and the violation proximately causes a plaintiff's injury." *Id.* (quoting, *Owens-Brooks*, 2024 WL 4338133, at *16). However, as discussed in Section B, *supra*, Plaintiffs negligence *per se* claims cannot be based on  HIPAA or the FTCA. Even if Plaintiffs were permitted to bring a negligence *per se* claim based on HIPAA or the FTCA, their claims would still fail because as discussed in Section C, *supra*, Plaintiffs have not alleged facts sufficient to establish that Defendants' purported acts or omissions caused their injuries. Accordingly,

18

this Court should dismiss Plaintiffs' negligence *per se* claim.

      E.      <u>Plaintiffs' Breach of Third-Party Beneficiary Contract Claim (Count III) fails.</u>

While Plaintiffs assert that they plead this claim in the alternative (ECF 52 at 23), each alternative claim still must be adequately pled to survive a motion to dismiss. *Forest Guardians*, 478 F.3d at 1160. Even assuming the economic loss rule applies and bars Plaintiffs' tort claims (as discussed in Section B, *supra*, it does) Plaintiffs must still adequately plead a breach of third-party beneficiary contract, which they have not.

Plaintiffs first argue that they are members of an identifiable class whose information was the subject of the contracts between Wakefield and their clients, and that Wakefield's agreement to safeguard Plaintiffs' information was for their benefit. ECF 52 at 29. While a contract need not expressly state that the contracting parties intend to confer a benefit on a non-contracting party, "the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Harwig v. Downey*, 56 P.3d 1220, 1221 (Colo. App. 2002). Plaintiffs fail to set forth any factual allegations demonstrating that Defendants and their clients specifically intended to confer a direct benefit on Plaintiffs. To the contrary, Plaintiffs acknowledge that the purpose of the agreements was to benefit Wakefield's clients by assisting them with revenue cycle and collection operations. ECF 44, ¶ 29; *see also* ECF 52 at 29. Any data-security obligations Wakefield assumed under those agreements were incidental to the primary purpose to assist the medical providers with revenue cycles and collections operations. An incidental benefit to Plaintiffs does not transform them into intended third-party beneficiaries, and, for this reason alone, this claim fails.

Plaintiffs next assert that they stated a valid claim for breach of contract. ECF 52

19

at 29-30. In Colorado, Plaintiffs are required to cite the specific provision, standard of care, or obligation Defendants breached in the contract when making a breach of contract claim, which Plaintiffs failed to do. *See Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA 148, ¶ 55 (finding that because there was no allegations setting forth the specific provision of the agreement that defendant allegedly breached, the plaintiff did not set forth sufficient factual allegations to plausibly support the "failure to perform" element of her breach of contract claim.). Because Plaintiffs failed to plead what is *minimally* required for a breach of contract claim, this Court should dismiss this claim.

  F.  <u>Plaintiffs' Invasion of Privacy Claim (Count IV) fails.</u>

Plaintiffs' Invasion of Privacy claim fails because Plaintiffs cannot establish the intent element of intrusion upon seclusion. Plaintiffs rely on the same argument this Court expressly rejected in *Conceptions*. ECF 52 at 31; *Conceptions*, 2026 WL 1145600, at *10. Plaintiffs contend that intent is satisfied because Wakefield "must have been substantially certain that its failure to invest in reasonable cybersecurity measures would lead to a data breach." ECF 52 at 31. Critically, Plaintiffs offer no non-speculative, non-conclusory allegations that Defendants actually knew or believed a data breach was substantially certain to occur as a result of their security practices. *See Conceptions*, 2026 WL 1145600, at *10. Accordingly, this Court should follow its decision in *Conceptions* and dismiss this claim.

<strong><u>CONCLUSION</u></strong>

For the reasons set forth herein and in their initial Memorandum in Support of their Motion to Dismiss, Defendants Wakefield & Associates, LLC and RevCo Solutions, Inc. respectfully request that this Court grant their Motion and dismiss Plaintiffs' Second Amended Consolidated Complaint in its entirety.

20

Dated:  May 18, 2026

Respectfully submitted,

WAKEFIELD & ASSOCIATES, LLC and
REVCO SOLUTIONS, INC, Defendants

*/s/ Joseph M. Sanders*

Joseph M. Sanders
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel: 312-704-3345
Email: jmsanders@hinshawlaw.com

*/s/ Peyton K. Phillips*

Peyton K. Phillips
**HINSHAW & CULBERTSON LLP**
790 N Water Street, Suite 1950
Milwaukee, Wisconsin 53202
Tel: 414-225-4830
Email: pphillips@hinshawlaw.com

21

1093161\329632142.v1

**Certification Re: Use of Generative Artificial Intelligence ("AI") for Drafting**

The undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

Dated: May 18, 2026                    _/s/ Joseph Sanders_
                                       Joseph Sanders


                                       _/s/ Peyton Phillips_
                                       Peyton Phillips

1093161\329632142.v1