# Exhibit 2

Case No. 1:25-cv-02937-NYW-TPO     Document 56-2     filed 05/18/26     USDC Colorado
pg 1 of 10

 Neutral
As of: May 14, 2026 2:53 PM Z

# Teklehaimanot v. Denver Health Med. Ctr.

District Court of Colorado, Denver County

January 3, 2016, Decided; January 3, 2016, Filed

Case Number: 2015CV30035

**Reporter**
2016 Colo. Dist. LEXIS 759 *

SARA WOLDAY TEKLEHAIMANOT, Plaintiff v. DENVER HEALTH MEDICAL CENTER; DENVER DEPARTMENT OF HEALTH AND HOSPITALS; WASTE MANAGEMENT OF COLORADO, INC., Defendants

**Prior History:** Teklehaimanot v. Denver Health Med. Ctr., 2015 Colo. Dist. LEXIS 866 (June 7, 2015)

**Judges:** [*1] Judge Karen L. Brody, Denver District Judge.

**Opinion by:** Karen L. Brody

# Opinion

**ORDER GRANTING DEFENDANT WASTE MANAGEMENT OF COLORADO, INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendant Waste Management of Colorado, Inc. seeks entry of summary judgment against Plaintiff Sara Wolday Teklehaimanot on her claims for negligence, negligence per se, and invasion of privacy (constituting all claims asserted against Waste Management in this case). After reviewing the parties' filings, the exhibits provided, the Court's file, and applicable law, the Court grants Waste Management's motion based on the following;

## I. Background

Plaintiff initiated this action to recover damages resulting from the alleged improper handling of her medical records.

In May 2014, Plaintiff received medical treatment at Denver Health Medical Center. Compl. ¶ 6. At some point in time between May 13, 2014 and May 18, 2014, unknown employees of Denver Health Medical Center improperly placed her confidential medical records in the general trash. Compl. ¶ 7. Waste Management, Denver Health's trash disposal vendor, then picked up the trash to transport it to a landfill. Mot. Summ. J. p. 2. While being transported, the trash containing Plaintiff's medical [*2] records somehow dropped from the truck along the side of the road on East Hampden Avenue near Gun Club Road. Compl. ¶ 8. Plaintiff apparently learned that this had occurred when a local news station contacted her about the discovery of her records.

On January 5, 2015 Plaintiff filed a complaint asserting claims against all named defendants for negligence, negligence per se, and invasion of privacy. Denver Health moved to dismiss Plaintiff's complaint under C.R.C.P. 12(b)(1), contending that the Court lacked subject matter jurisdiction over the case because Plaintiff failed to provide proper notice of its claim under the Colorado Governmental Immunity Act. The Court granted Denver Health's motion on June 7, 2015 and dismissed it from this case.

Waste Management now moves for summary judgment contending that each of Plaintiff's three claims fail as a matter of law. Waste Management argues that Plaintiff's negligence claim fails because it owed no duty of care to Plaintiff. Waste Management contends that Plaintiff has no basis for a negligence per se claim because C.R.S. § 18-4-511 (the "littering statute") cannot constitute a basis for such a claim. Waste Management also argues that Plaintiff's invasion of privacy claims [*3] fails because Plaintiff cannot satisfy elements of the claims asserted. Specifically, Plaintiff cannot show that Waste Management acted intentionally in allegedly invading her privacy, a requirement for sustain a claim for intrusion upon the seclusion of another. Plaintiff also cannot show that her private information was published or that Waste Management acted with reckless disregard in allegedly causing her medical records to be disclosed, elements required to establish a claim for unreasonable publicity

given to another's private life.

In response, Plaintiff contends that Waste Management owed a duty to individuals whose interests might be affected by the dumping of trash to prevent such dumping, and argues that her harm claimed was foreseeable because Waste Management had to know that injury can result from dropping trash on a highway. With respect to her negligence per se claim, Plaintiff provides little response, contending only that this claim has merit for the same reason as her common law negligence claim and that the violation of any "safety" statute is evidence of negligence. Plaintiff also argues that her invasion of privacy claim should survive because there was no "reasonable [*4] reason" for Waste Management to have dumped her medical records on the highway demonstrating a reckless disregard for her privacy interests.

## II. <u>Standard of Review</u>[1]

C.R.C.P. 56(c) allows a court to grant a motion for summary judgment before trial "when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gibbons v. Ludlow*, 304 P.3d 239, 244, 2013 CO 49 (Colo. 2013). Because summary judgment "denies litigants their right to [a] trial," it is a "drastic remedy," and is "never warranted except on a clear showing that there is no genuine issue as to any material fact." *Ginter v. Palmer &; Co.*, 196 Colo. 203, 585 P.2d 583, 584 (Colo. 1978).

A material fact is a fact that, when resolved, "will affect the outcome of the case." *Dominguez Reservoir Corp. v. Feil*, 854 P.2d 791, 795 (Colo. 1993) (internal quotation marks omitted); *see City of Aurora v. ACJP'ship*, 209 P.3d 1076, 1082 (Colo. 2009); *Anderson v. Vail Corp.*, 251 P.3d 1125, 1127 (Colo. App. 2010). "Because the trial court may not assess the weight of the evidence or credibility of witnesses in determining a motion for summary judgment, the court may not grant summary judgment when there is a controverted factual issue that must be resolved in a trial." *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 718 (Colo. 1987).

---

[1] This statement of the standard of review for evaluating a summary judgment motion is taken in its entirety from *In re Interest of S.N.*, 338 P.3d 508, 2014 COA 116 (Colo. App. 2014) which the Colorado Court of Appeals has identified as a comprehensive statement of law relating to summary judgment motions.

Material facts that generally require weighing of the evidence include "such issues as good faith, intent, and purpose," and "the bald declaration of a party by affidavit is not sufficient to [*5] resolve [these issues] in the face of a pleaded denial." *Dominguez Reservoir Corp.*, 854 P.2d at 796 (internal quotation marks omitted); *see Wolther v. Schaarschmidt*, 738 P.2d 25, 28 (Colo. App. 1986). Where reasonable people could reach different conclusions about the evidence, summary judgment is not appropriate. *See City of Aurora*, 209 P.3d at 1082; *Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 239 (Colo. 1984).

The burdens to show a dispute about whether there is a genuine issue of material fact are as follows. "The moving party has the initial burden to show that there is no genuine issue of material fact." *AviComm, Inc. v. Colorado PUC*, 955 P.2d 1023, 1029 (Colo. 1998); *Kaiser Found. Health Plan*, 741 P.2d at 718-19. Because the initial burden is on the moving party, if the moving party does not meet this burden, summary judgment must be denied. *See Wolther*, 738 P.2d at 28 ("[If] the moving party's proof does not itself demonstrate the lack of a genuine factual issue, summary judgment is inappropriate."); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988). But, if the moving party meets its burden, the burden shifts to the nonmoving party to "adequately demonstrate by relevant and specific facts that a real controversy exists." *City of Aurora*, 209 P.3d at 1082; *see People ex rel. S.N.*, 329 P.3d 276, 281-82, 2014 CO 64 (Colo. 2014) ("Only if" the moving party meets its burden "must the opposing party then demonstrate a controverted factual question."). Then, if the nonmoving party "fails to establish a controverted factual question," summary judgment should still only be granted "in a narrow set of circumstances." *In re Interest of S.N.*, 29 P.3d at 282. These circumstances [*6] include when "the material facts are undisputed [and] also that reasonable minds could draw but one inference from them." *Id.* (internal quotation marks omitted).

Nevertheless, if the nonmoving party meets its burden and shows that a controversy exists, summary judgment must be denied. *See Struble v. Am. Family Ins. Co.*, 172 P.3d 950, 955 (Colo. App. 2007). Any dispute over a material fact must then be resolved at trial. *See Dominguez Reservoir Corp.*, 854 P.2d at 795-96; *see Mt. Emmons Mining Co.*, 690 P.2d at 239 (Summary judgment is reserved *"only* " for cases "where there is no dispute as to material facts and thus no role for the fact finder to play" at a trial.) (emphasis in original).

### III. <u>Undisputed Material Facts</u>

For the purpose of evaluating Waste Management's motion for summary judgment, the following facts are undisputed by the parties[2]:

1. On or about May 13, 2014, Plaintiff was a patient at Denver Health Medical Center, having a surgical procedure. Mot. Summ. J. ¶ 1; Compl. ¶ 6.

2. At some point between May 13, 2014 and May 18, 2014, Plaintiff's confidential medical records were improperly placed in the general trash by unknown employees of Denver Health. The general trash compactor is not supposed to contain medical records. Mot. Summ. J. ¶ 1-2 Ex. A ¶ 4; Compl. ¶ 7.

3. On May 17, 2014, Waste Management picked up this trash [*7] to transport it to a landfill. During transportation, bags of trash containing Plaintiff's medical records somehow dropped off a Waste Management truck on East Hampden Avenue near Gun Club Road. Mot. Summ. J. ¶ 3 Ex. A ¶ 3; Compl. ¶ 8. The truck was carrying a receiver box from Denver Health's San-i-Pak compactor. Mot. Summ. J. Ex. A ¶ 3.

4. The San-i-Pak compactor is meant to contain solid hospital trash. Medical records are not supposed to be deposited into the San-i-Pak compactor. It would be a complete anomaly for any intact medical records to be contained in a San-i-Pak compactor or in any other general trash containers serviced by Waste Management. Mot. Summ. J. Ex. A ¶ 4.

5. Waste Management did not know, and had no reason to know, that the San-i-Pak compactor contained medical records when Waste Management picked up the load on May 17, 2014. Waste Management did not learn that medical records were contained in the dropped bags of trash until 9News aired a story about the incident some days later. Mot. Summ. J. ¶ 5 Ex. A ¶ 5; Ex. C. ¶ 6.

6. Waste Management did not intend to drop the trash from its truck on May 17, 2014; the incident was accidental. Mot. Summ. J. ¶ 4 Ex. A. ¶ 6; [*8] See Resp. ¶ 2.

### IV. <u>Analysis</u>

### A. Negligence Claim

Plaintiff alleges that Waste Management owed her a duty to exercise reasonable care in the handling of her personal medical information and that Waste Management negligently breached that duty resulting in damages. Compl. ¶ 12-14. Waste Management argues that it owed no duty to Plaintiff; therefore, Plaintiff's negligence claim fails as a matter of law.

"To establish a common-law negligence claim, the plaintiff must show that the defendant owed the plaintiff a legal duty to conform to a standard of care, the defendant breached that duty, the plaintiff suffered injury, and there is a causal relationship between the breach and the injury. The defendant owes a duty to act when it is reasonably foreseeable that the failure to act will create an unreasonable risk of harm to another." *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002). Absent a special relationship between a plaintiff and defendant, a defendant owes no duty to a plaintiff to take affirmative measures to prevent harm to the plaintiff. *Bittle v. Brunetti*, 750 P.2d 49, 53 (Colo. 1988). Where the law imposes no duty on a defendant to act for the benefit of the plaintiff, a negligence claim must fail. *Woods v. Delgar Ltd.*, 226 P.3d 1178, 1180 (Colo. App. 2009).

"The question of whether a defendant owes a plaintiff a duty to act to avoid [*9] injury is a question of law to be determined by the court." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987). In determining whether the law imposes such a duty on a particular defendant, a court should consider a variety of factors, including, but not limited to: (1) the risk involved, (2) the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, (3) the magnitude of

---

[2] The Court notes that Plaintiff failed to provide any affidavits in response to Waste Management's affidavit. Plaintiff failed to cite any evidence in the record from discovery responses or other sources to refute Waste Management's affidavit with the exception of providing certain responses to interrogatories provided by Plaintiff relating only to the narrow question of whether Plaintiff's medical records were "generally publicized" for purposes of establishing her unreasonable publicity given to another's private life claim. The Court thus concludes that the facts established in Waste Management's affidavit from Bill Hull, Dispatch Supervisor for Waste Management, are undisputed with the exception of Plaintiff's contention that her private information was published because Plaintiff failed to come forward with specific and relevant facts to refute Waste Management's factual showing.

the burden of guarding against injury or harm, and (4) the consequences of placing the burden upon the actor. *Id.* As the Colorado Supreme Court has found:

> A court's conclusion that a duty does or does not exist is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection. No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists.

*Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987) (internal quotations and citations omitted).

The Court finds that Waste Management did not owe a legal duty to Plaintiff to exercise reasonable care in the handling of her confidential medical records, based on several considerations. [*10]

There is no special relationship between Plaintiff and Waste Management that would impose a duty on Waste Management to take affirmative measures to prevent the type of harm about which Plaintiff complains in this case. Waste Management was hired by Denver Health to pick up only solid hospital trash (not medical records) that Denver Health had disposed of, presumably in accordance with its own procedures. Mot. Summ. J. Ex. A. ¶¶ 3-5. Plaintiff has not alleged that Waste Management had any contractual or other relationship with her. Indeed, there is no evidence in the record demonstrating that Waste Management might pick up confidential medical records from Denver Health, or would have any reason to know that Denver Health had improperly disposed of medical records such that some obligation might be imposed on Waste Management to exercise care in the handling of such records. Rather, the undisputed evidence establishes that Waste Management had no expectation that it would pick up confidential records. Mot. Summ. J. ¶ 5.

The risk of disclosure of private medical records resulting from Waste Management's dropping of trash picked up from Denver Health is low, supporting the conclusion that [*11] Waste Management owed no duty of care to Plaintiff. The undisputed evidence in the record, as established by the affidavit testimony of Mr. Hull, establishes that the trash that Waste Management was collecting was to be solid hospital trash that had been placed in a San-i-Pak compactor. Mot. Summ. J. Ex. A. ¶ 3. Confidential medical records were not to be deposited into this compactor. Mot. Summ. J. Ex. A ¶ 4. . It would be an anomaly for any intact medical records to be contained in this compactor or in any other general trash containers serviced by Waste Management. Mot. Summ. J. Ex. A ¶ 4. Given that Waste Management was to pick up only solid hospital trash, not medical records, and had no reason to know that a Denver Health employee would mistakenly dispose of medical records incorrectly, or that its truck might inadvertently drop trash containing confidential information, Waste Management would have no reason to know of, or anticipate the risk that, an inadvertent dropping of the trash would result in the harm claimed by Plaintiff.

The foreseeability and likelihood of the injury claimed by Plaintiff in this case when weighed against the social utility of Waste Management's conduct [*12] also supports a finding that Waste Management owed no duty of care to Plaintiff.

While foreseeability does not require a defendant to ascertain precisely when or how an incident will occur, it does require that something be likely enough to happen that a reasonably thoughtful person would take account of it in guiding practical conduct. *Taco Bell* 744 P.2d at 48. Foreseeability is based on the common sense perceptions of the risks created by various conditions and circumstances. *Id.* Here, Waste Management had no reason to foresee that the San-i-Pak compactor from which it collected trash would contain confidential medical records that had been improperly disposed of by Denver Health, nor could Waste Management have foreseen that if trash accidentally fell from one of its trucks, confidential medical records would be found and disclosed to the public as Plaintiff claims. The undisputed evidence in the record establishes that the San-i-Pak compactors from which Waste Management collected trash were to contain only solid hospital waste, not medical records, and that Plaintiff's confidential medical records were *improperly* placed in the general trash by Denver Health. Not only was there no expectation that medical [*13] records would be placed in the San-i-Pak compactor, the undisputed evidence establishes that Waste Management did not know, and had no reason to know, that the compactor contained any medical records when it was picked up on May 17, 2014. Mot. Summ J. Ex. A ¶ 4-5. Moreover, there is no evidence in the record of any history of confidential information being improperly placed in trash picked up by Waste Management that might put Waste Management on notice of the type of harm at issue in this case, nor is there evidence that the dropping of trash from Waste Management's trucks is anything but

an accidental occurrence.

While the foreseeability and likelihood of the injury claimed by Plaintiff is slight, the social utility of Waste Management's conduct is important, further supporting the conclusion that no duty of care exists in this case. Trash collection is clearly a valuable public service that enhances the public's quality of life and without it, there would be significant detrimental impacts to the public welfare.[3]

The Court also finds that the magnitude of the burden of guarding against the harm claimed by Plaintiff in this case would be significant, and that the consequences [*14] of placing the burden on Waste Management would be onerous. In short, if trash collectors were to be found to owe the type of duty of care urged by Plaintiff, no one would collect trash.

The duty claimed by Plaintiff would require that trash companies take affirmative steps to identify conceivable types of harm that could potentially flow from the inadvertent dropping of trash, to inspect all of the trash collected to identify possible sensitive or confidential information that may not have been improperly disposed, and to then contact its customers to verify that the trash should not have been disposed. The burden and expense of doing so would be astronomical and makes no sense. Essentially, trash collectors would be required to have on their staff individuals with expertise in determining whether confidential information has been disposed of, and sufficient staff to sort through any trash collected that might contain confidential

---

[3] To refute this conclusion, Plaintiff contends that under *Taco Bell*, a court should assess the specific conduct of a defendant that infringes on the plaintiff s interest, not the defendant's conduct generally. In other words, Plaintiff believes that a court must evaluate the social utility of dumping trash on the highway, not the social utility of collecting and disposing of trash and that because there is no social utility in dumping trash, Waste Management owed Plaintiff a duty. Resp. Mot. Summ. J. ¶ 5. Plaintiff's position misapprehends the law. The conduct to be evaluated for purposes of determining social utility is not what the defendant allegedly did wrong (that is inadvertently dropping trash), the conduct is what the defendant does (trash collection) and whether what the defendant does has social utility. *See Safehouse Progressive Alliance for Nonviolence, Inc. v. Qwest Corp.*, 174 P.3d 821, 831 (Colo. App. 2007) (evaluating the social utility of the defendant's publication of commercial telephone directories for the purpose of determining whether a duty of care existed, *not* the social utility of the defendant having improperly publish the address of a safe house).

information to see whether an improper disposal had occurred. Not only would this impose significant costs on Waste Management not to mention significant logistical challenges, this burden is far more effectively born by those responsible for the handling [*15] and disposal of confidential information such as medical records, not trash collectors.

Plaintiff's contention that the burden is minimal because all Waste Management has to do is not drop trash on the highway is unpersuasive. Plaintiff has provided no evidence that Waste Management frequently drops trash from its truck or that the dropping of trash is a problem. This was an accidental occurrence as the undisputed evidence in the record demonstrates and it is inconceivable to expect that Waste Management could figure out a way to prevent any and all accidental droppings of trash from occurring.

For these reasons, the Court concludes that Waste Management owed no legal duty to Plaintiff under the circumstances of this case. Accordingly, Plaintiff's claim for negligence against Waste Management is dismissed.

## B. Plaintiff's Negligence Per Se Claim

Plaintiff contends that Waste Management is liable for negligence per se for violating the state's littering statute, C.R.S. § 18-4-511, which provides in relevant part:

> Any person who deposits, throws, or leaves any litter on any public or private property or in any waters commits littering.
>
> * * *
>
> (3)(a) The term "litter" as used in this section means all rubbish, [*16] waste material, refuse, garbage, trash, debris, or other foreign substances, solid or liquid, of every form, size, kind, and description.
>
> (b) The phrase "public or private property" as used in this section includes, but is not limited to, the right-of-way of any road or highway, any body of water or watercourse, including frozen areas or the shores or beaches thereof, any park, playground, or building, any refuge, conservation, or recreation area, and any residential, farm, or ranch properties or timberlands.
>
> (4) Except as otherwise provided in sections 33-15-108(2) and 42-4-1406, C.R.S., littering is a class 2

petty offense punishable, upon conviction, by a mandatory fine of not less than twenty dollars nor more than five hundred dollars upon a first conviction, by a mandatory fine of not less than fifty dollars nor more than one thousand dollars upon a second conviction, and by a mandatory fine of not less than one hundred dollars nor more than one thousand dollars upon a third or subsequent conviction.

(5) It is in the discretion of the court, upon the conviction of any person and the imposition of a fine under this section, to suspend any or all of the fine in excess of the mandatory minimum fine upon the condition that [*17] the convicted person gather and remove from specified public property or specified private property, with prior permission of the owner or tenant in lawful possession thereof, any litter found thereon, or upon the condition that the convicted person pick up litter at a time prescribed by and a place within the jurisdiction of the court for not less than eight hours upon a first conviction or for not less than sixteen hours upon a second or subsequent conviction.

(6) Whenever litter is thrown, deposited, dropped, or dumped from any motor vehicle in violation of this section, the operator of said motor vehicle is presumed to have caused or permitted the litter to be so thrown, deposited, dropped, or dumped therefrom.

(7) In addition to those law enforcement officers and agencies of this state and the political subdivisions thereof authorized to enforce this section, the officers of the Colorado state patrol and the district wildlife managers and other commissioned officers of the division of parks and wildlife are expressly authorized, empowered, and directed to enforce the provisions of this section.

"Negligence per se occurs when the defendant violates a statute adopted for the public's [*18] safety and the violation proximately causes the plaintiff's injury." *Scott*, 39 P.3d at 1166. "To recover, the plaintiff must demonstrate that the statute was intended to protect against the type of injury she suffered and that she is a member of the group of persons the statute was intended to protect." *Id.*

Before a claim for negligence per se can be maintained, the plaintiff must prove that violation of an ordinance creates or unreasonably increases a risk of injury to persons or property. *Dunlap v. Colo. Springs*

*Cablevision, Inc.*, 799 P.2d 416, 417-18 (Colo. App. 1990), *rev'd on other grounds*, 829 P.2d 1286 (Colo. 1992). "If the exclusive purpose of a legislative enactment is to secure rights or privileges to the public at large, not citizens in their individual capacity, no basis exists for a claim of negligence per se." *Id.* . A court will not infer a private negligence per se right of action based on a statutory violation unless it discerns a clear legislative intent to create a private right of action. *Lawson v. Stow*, 327 P.3d 340, 350, 2014 COA 26 (Colo. App. 2014). When a statute does not expressly provide for a private right of action, a court is to consider three factors to determine if one should exist: (1) whether the plaintiff is within the class of persons intended to be benefited by the statute, (2) whether the General Assembly intended, albeit implicitly, to [*19] create a private right of action, and (3) whether allowing such an action would be consistent with the purpose of the legislative scheme. *Id.*

The determination of whether the violation of a statute or ordinance establishes a breach of a legally cognizable duty requires a careful evaluation of the policies underlying the enactment and a variety of other factors. *Bittle v. Brunetti*, 750 P.2d 49, 57 (Colo. 1988). Not every statute or ordinance will be held to establish a duty and a standard of care under the negligence per se doctrine. *Id.*

Considering the factors giving rise to a negligence per se claim, and C.R.S. § 18-4-511, Plaintiff's negligence per se claim fails as a matter of law.

As an initial observation, Plaintiff has failed to identify any legal authority supporting the contention that C.R.S. § 18-4-511 gives rise to a negligence per se claim under any circumstances, let alone circumstances similar to those at issue here. In response to Waste Management's position, Plaintiff does not substantively address the arguments made at all making only the bald assertion that '[t]he violation of a safety statute regulating the use of roadways is evidence of negligence" Pl.'s Resp. ¶ 8.

C.R.S. § 18-4-511 does not expressly provide for a private right of action. The littering statute states [*20] that a violation of the statute is punishable upon conviction by a mandatory fine. C.R.S. § 18-4-511(4). In the discretion of the court, upon the conviction of any person and the imposition of a fine, a court may suspend the fine on the condition that the convicted person gather and remove the trash from the property in question. C.R.S. § 18-4-511(5). The statute further

provides that in addition to law enforcement officers and agencies of the state and political subdivisions of the state having the power to enforce the statute, the officers of the Colorado state patrol and the district wildlife managers and other commissioned officers of the division of parks and wildlife are authorized to enforce provisions of the statute. C.R.S. § 18-4-511(7). Plaintiff, a private individual, has no right to enforce this statute; thus, this statute is not a legislative enactment designed to create individual legal claims rather than to benefit the public at large.

Moreover, no private right of action can be inferred from the statute. Plaintiff is not within the class of victims that the statute is designed to protect. The victims of offenses under C.R.S. § 18-4-511 are public or private property owners who have had trash dumped on their premises. The statute provides no protection [*21] for third parties such as Plaintiff who happen to have had private information contained in trash disclosed when dropped on public or private property. There is no indication in the statute that the General Assembly implicitly intended to create a private right of action to prevent the type of harm claimed by Plaintiff here - that is the improper disposal of confidential information and accidental dropping of it by a trash collector. Moreover, allowing Plaintiff to base a negligence per se claim on the littering statute would not be consistent with the purpose of the legislative scheme. The purpose of the statute is to make the throwing of litter on public or private property a punishable offense, not to protect against an alleged invasion of privacy resulting from the dropping of confidential medical information on a public road. Although there is no law interpreting the current statute, the conclusion that the littering statute is for the benefit of the public at large, not to protect the rights of individuals such as Plaintiff is supported by the Colorado Supreme Court's opinion in *People v. Hupp*, 53 Colo. 80, 123 P. 651 (Colo. 1912). Referencing an anti-littering/anti-dumping statute in place in 1910, the Colorado Supreme Court [*22] stated that "[i]t is intended to restrain and regulate the use of private property so as to protect the common right of all the citizens of the state." *Id.* at 654.

The Court also concludes that Plaintiff's negligence per se claim fails because the littering statute was not adopted for public safety purposes. In order to prevail on a negligence per se claim, the underlying statute must be directly - not tangentially - related to public safety. *Lawson*, 327 P.3d at 350. Generally the types of statutes that courts have found support negligence per se claims involve traffic and pedestrian safety ordinances, motor vehicle safety statutes, liquor codes, building codes and the like, unlike statutes relating to littering. *Compare, LaGarde v. Aeverman*, 144 Colo. 465, 356 P.2d 971, 973-74 (Colo. 1960) (traffic and pedestrian safety ordinances a basis for negligence per se claim); *Hageman v. TSI, Inc.*, 786 P.2d 452, 454 (Colo. App. 1989) (federal motor vehicle safety regulations a basis for negligence per se claim); *Lyons v. Nasby, 770 P.2d 1250, 1257-58 (Colo. 1989), superseded by state as stated in Westin Operator, LLC v. Groh*, 347 P.2d 606, 614, 2015 CO 25 (Colo. 2015) (liquor code prohibiting sale to intoxicated persons serving as a basis for negligence per se claim) *with Lawson v. Stow*, 327 P.3d 340, 2014 COA 26 (Colo. App. 2014) (false reporting to authorities statute found not to be a basis for a negligence per se claim). The purpose of the statute at issue here is to keep public and private property clean and free of debris. [*23] While a tangential public safety benefit may result from keeping property clean, there is no direct public safety benefit from the statute.

Plaintiff's negligence per se claim further fails because the statute was not intended to protect against the type of injury claimed in this case. Plaintiff alleges damages for "pain, suffering, and loss of privacy" caused by public disclosure of medical records. Pl.'s July 20, 2015 Initial Disclosures at III. There is no indication in the littering statute that its purpose is to protect against these types of injuries. As is clear from the statute, its purpose is to keep public and private roads free of trash, not to ensure that individuals such as Plaintiff will be protected from the inadvertent disclosure of confidential information that happens to be dropped on a public highway.

Based on these considerations, the Court finds that C.R.S. § 18-4-511 may not serve as a basis for a negligence per se claim. Consequently, Plaintiff's negligence per se claim is dismissed.

## C. Invasion of Privacy

Plaintiff contends that Waste Management's actions caused (1) unreasonable intrusion upon the seclusion of Plaintiff and (2) unreasonable publicity given to her private life. Compl. [*24] ¶ 22. Waste Management argues that Plaintiff's claim fails because there is no evidence that Waste Management acted intentionally, no evidence that facts relating to Plaintiff's private life were "published," and no evidence that Waste Management acted in reckless disregard of the private nature of the information at issue.

For a plaintiff to recover for the unreasonable intrusion upon seclusion, the plaintiff must show that the defendant "intentionally intruded, physically or otherwise, upon the plaintiff's seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person." *Pearson v. Kancilia*, 70 P.3d 594, 598-99 (Colo. App. 2003); CJI-Civ. 28.1. "The intrusion into the plaintiff's privacy requires intentional rather than merely reckless conduct." CJI-Civ. 28:1 cmt. 9 *(citing Fire Ins. Exch. v. Sullivan*, 224 P.3d 348, 353 (Colo. App. 2009)).

The undisputed evidence in the record, unrebutted by Plaintiff, is that even if Plaintiff could demonstrate that her privacy had been invaded, Waste Management did not act intentionally. The affidavit testimony of Mr. Hull, Waste Management's Dispatch Supervisor, establishes that Waste Management did not know and had no reason to know when it picked up the trash in question that it contained confidential medical records of Plaintiff. [*25] Mot. Summ. J. Ex. A ¶ 5. The dropping of the trash that occurred was purely accidental and not intentional. Mot. Summ. J. Ex. A. ¶ 6. In the absence of any showing by Plaintiff that Waste Management intentionally invaded her privacy, her claim for intrusion upon seclusion fails.

With respect to Plaintiff's second invasion of privacy claim - by public disclosure of private facts - Plaintiff must prove that : (1) the fact or facts disclosed are private in nature, (2) the disclosure has been made to the public, (3) the disclosure is one which would be highly offensive to a reasonable person, (4) the fact or facts disclosed cannot be of legitimate concern to the public, and (5) the defendant acted with reckless disregard of the private nature of the fact or facts disclosed. *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997). A person acts with reckless disregard of the private nature of the facts disclosed if, at the time of the disclosure, the person knew or should have known that the facts disclosed were private in nature. *Id.* at 379; CJI-Civ. 28:5.

Plaintiff cannot establish the fifth element of this claim.[4] The undisputed evidence in the record establishes that Waste Management did not know, nor should it have known that the trash that it collected [*26] from Denver Health contained confidential medical records. Mot. Summ. J. Ex. A. ¶ 5. As the unrefuted affidavit testimony

---

[4] Because this element is not satisfied, the Court need not address Waste Management assertion that Plaintiff also cannot meet the second element of her claim.

of Mr. Hull makes clear, Waste Management was only picking up trash deposited into a San-i-Pak compactor that was to contain solid hospital waste, not confidential medical records. Mot. Summ. J. Ex. A. ¶ 4. It would be a complete anomaly for intact medical records to be contained in the San-i-Pak compactor or in any other general trash containers serviced by Waste Management for Denver Health. Mot. Summ. J. Ex. A. ¶ 4. At the time that Waste Management picked up the trash that happened to contain Plaintiff's records, it did not know and had no reason to know that the records were there and did not even learn that medical records were contained in the dropped bags of trash until 9News aired a story about the incident. Mot. Summ. J. Ex. A. ¶ 5.

The Court notes that Plaintiff provides no substantive response to Waste Management's summary judgment motion. Waste Management met its burden on summary judgment with respect to this claim by providing the affidavit testimony of Mr. Hull regarding Plaintiff's inability to meet certain elements of her invasion of privacy claim. [*27] After Waste Management met its burden, the burden then shifted to Plaintiff to adequately demonstrate by relevant and specific facts that a real controversy exists, which Plaintiff has failed to do. In response to Waste Management's evidence, Plaintiff argues that Waste Management's assertion that her claim does not meet the second or fifth elements under *Ozer* fails to recognize that a claim for unreasonable intrusion of seclusion exists. Waste Management's summary judgment motion does, in fact, recognize that Plaintiff has pled two alternative invasion of privacy claims and addresses why each one fails. With respect to her public disclosure of private facts claim, Plaintiff states that "[g]iven that it is undisputed that there was no reasonable reason for Defendant to have dumped Plaintiff's medical records on the highway," the requirement for Waste Management to have acted with reckless disregard for the private nature of the facts disclosed is satisfied. Plaintiff's conclusory assertion, constituting only argument of counsel, that "there was no reasonable reason" for Waste Management to have dropped her records does not constitute relevant and specific facts showing that Waste Management [*28] acted with reckless disregard of the private nature of the facts disclosed, and does not show that there is a disputed issue of fact establishing that Waste Management knew or reasonably should have known that the facts allegedly disclosed were private in nature.

Accordingly, Court finds that Plaintiff's invasion of privacy claim also fails as a matter of law.

## D. Request for Attorney Fees and Costs

Waste Management requests that the Court award it both reasonable attorney fees and costs under C.R.S. § 13-17-102. Waste Management contends that it has attempted to confer with Plaintiff to obtain a dismissal of her claims because they were unsupported legally. Plaintiff refused to agree to a voluntary dismissal of her claims resulting in Waste Management incurring significant and needless fees and costs to defend against Plaintiff's groundless claims.

With respect to costs, the Court finds that Waste Management is a prevailing party in this action and entitled to recover its costs under C.R.C.P. 54(d).

The Court will consider Waste Management's request for an award of attorney fees, but only in accordance with C.R.C.P. 121 § 1-22(2) and C.R.S. § 13-17-102(4). Waste Management may file a motion requesting an award of attorney fees that specifically addresses, [*29] based on relevant law and what has occurred in this case, why statutory attorney fees should be awarded. Plaintiff will then have a full opportunity to respond and Waste Management may reply.

Waste Management is to file any bill of costs or motion for attorney fees in accordance with the timing set forth in C.R.C.P. 121 § 1-22.

## V. Order

For the reasons discussed above, the Court GRANTS summary judgment in favor of Defendant Waste Management of Colorado, Inc. and against Plaintiff Sara Wolday Teklehaimanot. Plaintiff's negligence, negligence per se, and invasion of privacy claims, constituting the only remaining claims in this case, are dismissed with prejudice.

Given that this order resolves all outstanding claims in this case, any remaining pretrial deadlines are VACATED. The January 12, 2016 pretrial conference and February 16, 2016 trial of this matter are VACATED.

IT IS SO ORDERED on this Sunday, January 03, 2016

BY THE COURT:

/s/ Karen L. Brody

Judge Karen L. Brody

Denver District Judge

_____

**End of Document**